# Illinois Official Reports

## Appellate Court

---

*People v. Shenault*, 2014 IL App (2d) 130211

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HELEN SHENAULT, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-13-0211 |
| Filed | December 23, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions on two counts of resisting or obstructing a peace officer arising from an incident in which defendant was arrested following an encounter with a police officer as she was picking up her child at school were upheld, notwithstanding her contentions that she was entitled to a new trial on one count due to the trial court's improper application of the hearsay rule to bar the testimony of an eyewitness favorable to the defense and that her guilt was not proven beyond a reasonable doubt as to the second count, since the excluded hearsay related to defendant's contention that she drove away when she mistakenly thought that the officer was telling her that she could leave the scene and defendant failed to make a proper offer of proof that would support her claim, and as to defendant's second argument, there was sufficient evidence to support the jury's conclusion that defendant obstructed the police officer from arresting her when she repeatedly refused to get out of her car and forced the officer to risk his own safety by forcing her out. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 11-CF-510; the Hon. Patricia Piper Golden, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, Thomas A. Lilien, and Richard C. Harris, all of State Appellate Defender's Office, of Elgin, for appellant. |
| | |
| | Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Kathryn E. Kohls, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion. |
| | Justices Hudson and Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1     A Kane County grand jury returned a three-count indictment against defendant, Helen Shenault. Count I charged defendant with aggravated battery (720 ILCS 5/12-4(b)(18) (West 2010)) and counts II and III charged her with resisting or obstructing a peace officer (720 ILCS 5/31-1(a) (West 2010)). Following a jury trial, defendant was found not guilty of the aggravated battery charge but guilty of both counts of resisting or obstructing a peace officer. Defendant argues on appeal that she is entitled to a new trial on count II because the trial court misapplied the hearsay rule to bar certain eyewitness testimony favorable to the defense. She also argues that her conviction on count III must be reversed because the State failed to prove her guilt beyond a reasonable doubt. We affirm.

¶ 2     Count II of the indictment alleged, in pertinent part, that defendant "knowingly obstructed the performance of Matthew Fichtel of an authorized act within his official capacity, being the investigation of a traffic offense, knowing Matthew Fichtel to be a peace officer engaged in the execution of his official duties, in that the defendant after being lawfully stopped by Matthew Fichtel drove away from the traffic stop without authorization from Matthew Fichtel." Count III alleged, in pertinent part, that defendant "knowingly obstructed the performance of Matthew Fichtel of an authorized act within his official capacity, being the arrest of defendant, knowing Matthew Fichtel to be a peace officer engaged in the execution of his official duties, in that the defendant being told by Matthew Fichtel that she was under arrest refused to exit her vehicle."

¶ 3     The evidence presented at trial established that on March 11, 2011, Fichtel was an officer with the Aurora police department and was assigned to serve as a school resource officer at Aurora East High School. Fichtel testified that at about 3 p.m. he was sitting in a marked squad car, monitoring traffic as students left school for the day. Fichtel's squad car was located in a southbound lane of Smith Boulevard. Fichtel observed defendant drive up alongside his vehicle and come to a stop, blocking traffic behind her. Shortly thereafter, defendant's son exited the school and got into defendant's vehicle. As defendant started to drive off, Fichtel activated his vehicle's emergency lights and defendant stopped her vehicle. Fichtel told

defendant that he had stopped her because she had been obstructing traffic when she stopped to pick up her son. According to Fichtel, defendant became argumentative. Fichtel decided to issue a ticket to defendant. He told her not to move and he then walked back to his squad car and called dispatch for backup. Defendant began to pull away slowly. Fichtel approached the driver's-side window of defendant's vehicle and told defendant to stop. Fichtel asked to see defendant's driver's license and proof of insurance. According to Fichtel, defendant responded with an expletive and said, "I don't have to give you shit." Fichtel repeated his request and was met with a similar response. Defendant then drove away.

¶ 4        Fichtel returned to his squad car and followed defendant's vehicle as it proceeded south on Smith Boulevard and then east on Sixth Avenue. Fichtel caught up with defendant's vehicle at the corner of Sixth Avenue and Farnum Avenue. Defendant pulled her vehicle over. Fichtel told defendant that she was under arrest and directed her to exit the vehicle. According to Fichtel, defendant responded, "I don't have to do shit." Fichtel again told defendant to exit the vehicle, but defendant continued to protest and did not comply. Fichtel opened the driver's-side door and again told defendant to get out of the vehicle. Again defendant did not comply. Fichtel grabbed defendant's left arm and told defendant once more to exit the vehicle. Defendant pulled her arm away. Fichtel reached into the vehicle to remove defendant's seatbelt. As he did so, he felt defendant kick him in the chest. Fichtel then pulled defendant out of the vehicle and placed her under arrest.

¶ 5        Kelly Rodriguez testified for the State that, on the date in question, she was employed by the high school as a cafeteria worker and her daughter attended the school. Rodriguez was acquainted with Fichtel. At around 3 p.m., while waiting to pick up her daughter, Rodriguez observed that Fichtel was involved in a confrontation with a woman whose vehicle was parked in the designated bus area. Rodriguez was parked in a driveway leading from a parking lot to Smith Boulevard. Rodriguez heard the woman tell Fichtel that she was not moving her vehicle. The woman was upset and was cursing. Rodriguez, whose vehicle had been standing next to a fire hydrant, pulled forward onto Smith Boulevard and stopped in a spot that was one car length ahead of the woman's vehicle. Rodriguez heard Fichtel ask for the woman's driver's license. Asked how the woman responded, Rodriguez testified, "She said 'I am not giving you shit.' " Rodriguez saw Fichtel walk back to his squad car. She did not know whether the woman had given Fichtel her driver's license. By that point, Rodriguez's daughter arrived. Rodriguez started to drive off, but the woman pulled away from behind Rodriguez and drove past her on Smith Boulevard. Rodriguez testified that she pulled over in order to avoid being struck by the woman's vehicle.

¶ 6        On cross-examination, the following exchange took place:

"Q. And at some point when you pulled out or when you were in that area, did Officer Fichtel say to you it was okay for you to go?

MR. STAJDOHAR [Assistant State's Attorney]: Objection, hearsay.

THE COURT: Well, that's sustained.

[MS. BYRD] [defense attorney]:

Q. You were initially in the parking lot; correct?

A. Yes.

Q. And before you left the parking lot, you were hesitant to leave that area; correct?

A. No. I pulled around to the side so I didn't get in trouble for parking by the fire hydrant.

Q. And before you left the area, did you ask permission to leave the area?

A. Yes. I asked Officer Fichtel if it was okay for me to go.

Q. And did he respond to that at all?

A. Yes.

Q. What did he respond?

MR. STRAJDOHAR: Objection, hearsay.

THE COURT: Sustained.

[MS. BYRD]:

Q. Did he give a response that made you believe it was okay to go?

A. Yes.

MR. STRAJDOHAR: Objection. Calls for hearsay response.

THE COURT: Sustained. The jury will disregard."

¶ 7        Defendant's son, D'Wayne McCoy, testified for the defense. He indicated that the initial encounter with Fichtel on Smith Boulevard lasted about 10 minutes. McCoy testified that defendant's vehicle was in gear during the encounter. While Fichtel was walking back to his squad car, defendant put her vehicle in park. When she took her foot off the brake the vehicle moved slightly. Fichtel said " 'Don't move.' " Afterward, however, Fichtel made a hand gesture, which McCoy demonstrated. The court described the gesture (as demonstrated by McCoy) as follows: "He held his hand up bending his elbow putting his palm to the front and moved that forward and back." McCoy indicated that Fichtel also yelled something at that point. When defense counsel asked what Fichtel had yelled, the State objected on hearsay grounds. At that point, the following exchange took place:

"MS. BYRD: This goes to the affect [*sic*] on the listener, and it's not offered for the truth of the matter asserted.

THE COURT: And the affect [*sic*] of [*sic*] the listener being this witness?

MS. BYRD: He was there and it had an affect [*sic*] on him subsequently, yes.

THE COURT: Well, that's–I sustain the objection."

¶ 8        Defendant testified that during the initial encounter with Fichtel on Smith Boulevard she raised her voice when Fichtel indicated that he was going to issue a citation. However, she denied that she used profanity or told Fichtel "I don't have to give you shit." Asked what happened when Fichtel walked back to his squad car, defendant replied as follows:

"I saw him reach his radio or something like he was talking into his radio, and the next thing–because I am looking in my rear-view mirror looking at him, and I see him say, 'You okay. You can go.' "

Defendant testified that she believed that Fichtel was addressing her. She started to pull away from the curb. As she did so, another vehicle started to pull away. Defendant stopped her vehicle and the other vehicle also stopped. Defendant thought that the other driver was letting defendant pull into traffic. Defendant pulled away, proceeded south on Smith Boulevard, and turned left on Sixth Avenue.

¶ 9        While driving on Sixth Avenue, defendant saw Fichtel's squad car behind her. Its emergency lights and siren were activated. Defendant testified that she pulled over and

- 4 -

removed her seatbelt. According to defendant, Fichtel approached her vehicle, "snatched" the door open, and told her that she was under arrest. She testified that Fichtel "instantly started reaching" for her. Defendant "snatched" her arm away. She explained that she had two herniated disks and was concerned that Fichtel would hurt her back. Fichtel continued to reach for defendant several times, but she pulled away. She denied ever kicking Fichtel. She also denied that Fichtel told her to get out of the car before he pulled open the door.

¶ 10     We first consider defendant's argument that she is entitled to a new trial on count II of the indictment. Count II alleged that defendant committed the offense of resisting or obstructing a peace officer by driving away from a lawful traffic stop without authorization from the officer who conducted the stop. According to defendant, the trial court erred in sustaining the State's hearsay objections when defense counsel asked Rodriguez whether that officer–Fichtel–gave Rodriguez permission to drive away from the school and when defense counsel asked McCoy what Fichtel said before defendant drove away. Defendant argues that defense counsel was attempting to elicit evidence that would corroborate defendant's testimony that she thought Fichtel was addressing her when he apparently gave Rodriguez permission to leave. The State counters that defendant's failure to make a proper offer of proof is fatal to her argument. We agree.

¶ 11     It is well established that ordinarily an offer of proof is necessary to preserve a claim of error arising from the exclusion of evidence. *People v. Thompkins*, 181 Ill. 2d 1, 10 (1998). "The two primary functions of an offer of proof are to disclose to the trial judge and opposing counsel the nature of the offered evidence, enabling them to take appropriate action, and to provide the reviewing court with a record to determine whether exclusion of the evidence was erroneous and harmful." *Id.*

¶ 12     Rodriguez testified that she asked for Fichtel's permission to leave the scene of the initial encounter between Fichtel and defendant. When asked whether Fichtel's response made Rodriguez "believe it was okay to go," Rodriguez answered "Yes." The trial court instructed the jurors to disregard the answer. Defense counsel failed to make an offer of proof regarding the content of Fichtel's statement and any other circumstances indicating whether defendant could have heard the statement and believed that it was directed to her. In the absence of such an offer of proof, we cannot determine whether the testimony defendant sought to elicit from Rodriguez would have any appreciable value as corroboration of defendant's testimony. Similarly, because there was no offer of proof of McCoy's excluded testimony, it is impossible to determine whether its exclusion could have resulted in any prejudice to defendant.

¶ 13     Although defendant does not concede that offers of proof were necessary in this case, she contends that, even if they were, the exclusion of the testimony in question should be reviewed under the plain-error rule. "The plain-error doctrine is a very limited and narrow exception to the forfeiture or procedural default rule that allows a reviewing court to consider unpreserved error if either one of the following two circumstances is present: (1) a clear or obvious error occurred and the evidence in the case was so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error; or (2) a clear or obvious error occurred and the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Belknap*, 2013 IL App (3d) 110833, ¶ 87, *appeal allowed*, No. 117094 (Ill. Mar. 26, 2014). Defendant contends that the evidence is closely balanced. Be that as it may, however, the plain-error rule does not apply here. As this court has recently noted,

"the first step in determining whether the plain-error doctrine applies is to determine whether any reversible error occurred." *People v. Miller*, 2014 IL App (2d) 120873, ¶ 17. Defendant's failure to make proper offers of proof makes it impossible for us to take this first step. *Cf. People v. Leamons*, 127 Ill. App. 3d 1056, 1070 (1984) (in prosecution for aggravated indecent liberties with a child, exclusion of evidence of a prior false complaint by the alleged victim's mother was not plain error; because defendant made no offer of proof "concerning the manner in which he would prove the prior false complaint, *** [reviewing court was] in no position to determine whether the matter was subject to proper proof or not").

¶ 14    We next consider whether the State failed to prove beyond a reasonable doubt that defendant committed the offense of resisting or obstructing a peace officer, as charged in count III. A reviewing court will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). When reviewing a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and determining what inferences to draw, and a reviewing court ordinarily will not substitute its judgment on these matters for that of the trier of fact. *People v. Cooper*, 194 Ill. 2d 419, 431 (2000).

¶ 15    Count III alleged that defendant obstructed Fichtel's performance of an authorized act by refusing to exit her vehicle after being told that she was under arrest. Section 31-1(a) of the Criminal Code of 1961 (720 ILCS 5/31-1(a) (West 2010)) provided that "[a] person who knowingly resists or obstructs the performance by one known to the person to be a peace officer, firefighter, or correctional institution employee of any authorized act within his official capacity commits a Class A misdemeanor." Defendant does not dispute that Fichtel was authorized to place her under arrest. Nor does she dispute that she knew that Fichtel was a peace officer. However, according to defendant, "viewing the evidence in the light most favorable to the State, all that can be said regarding [defendant's] refusal to get out of her vehicle is that she allegedly became argumentative and said 'I don't have to do shit.' " According to defendant, her conduct did not "actually obstruct[ ]" Fichtel's effort to place her under arrest.

¶ 16    In *People v. Synnott*, 349 Ill. App. 3d 223 (2004), this court affirmed a conviction of obstructing a peace officer, based on the defendant's repeated refusal to comply with the officer's lawful order, following a traffic stop, to exit a vehicle. After the officer had given the order for the fourth time, the defendant grabbed the steering wheel with both hands. The officer then grabbed the defendant by the arm and pulled on him. On direct examination, the officer testified that " 'within a matter of seconds' " the defendant released the steering wheel and exited the vehicle. *Id.* at 224. On cross-examination, the officer testified that the defendant exited the vehicle a " 'split second' " after the officer grabbed the defendant's arm. *Id.* The defendant argued that a conviction of obstructing a peace officer could not be sustained absent proof of a physical act. *Id.* at 225. According to the defendant, merely refusing to comply with a police officer's orders did not constitute obstruction.

¶ 17    The *Synnott* court noted that in *People v. Raby*, 40 Ill. 2d 392 (1968), our supreme court observed as follows:

- 6 -

" ' " 'Resisting' or 'resistance' means 'withstanding the force or effect of' or the 'exertion of oneself to counteract or defeat'. 'Obstruct' means 'to be or come in the way of'. These terms are alike in that they imply some physical act or exertion. Given a reasonable and natural construction, these terms do not proscribe mere argument with a policeman about the validity of an arrest or other police action, but proscribe only some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties, such as going limp, forcefully resisting arrest or physically aiding a third party to avoid arrest." ' " *Synnott*, 349 Ill. App. 3d at 225 (quoting *Raby*, 40 Ill. 2d at 399, quoting *Landry v. Daley*, 280 F. Supp. 938, 959 (N.D. Ill. 1968)).

We concluded, however, that "the distinction between acting and refraining from action is [not] dispositive." *Id.* at 227. We reasoned that "in common usage in the criminal law context, the word 'act' is used broadly and is understood to include 'a failure or omission to take action' [citation]." *Id.* Citing *City of Chicago v. Meyer*, 44 Ill. 2d 1 (1969), we noted that "merely refusing a police officer's lawful order to move can constitute interference with the officer in the discharge of his or her duty." *Synnott*, 349 Ill. App. 3d at 227. We reasoned that "[t]he words 'interference' and 'obstruction' are nearly synonymous [citation], and if the former may consist of inaction, we see no reason why the latter may not also." *Id.*

¶ 18    In affirming the defendant's conviction of obstructing a peace officer in *Synnott*, we observed as follows:

"Following a lawful traffic stop, the police may, as a matter of course, order the driver and the passengers out of the vehicle pending the completion of the stop without violating the protections of the fourth amendment. [Citations.] The rule is based on considerations of officer safety. It seems clear that any behavior that actually threatens an officer's safety or even places an officer in fear for his or her safety is a significant impediment to the officer's performance of his or her duties. For these reasons, we cannot endorse the reasoning or result in the Fifth District's decision in *People v. Flannigan*, 131 Ill. App. 2d 1059 (1971), heavily relied on by defendant, which dismissed a motorist's repeated refusal to emerge from his car after being placed under arrest as 'at most an insubstantial display of antagonism or belligerence.' *Flannigan*, 131 Ill. App. 2d at 1063. In our view, a meaningful threat of prosecution for the sort of noncooperation in *Flannigan* and the present case is necessary to reduce the likelihood of physical confrontations." *Id.* at 228.

¶ 19    Citing, *inter alia*, *People v. Taylor*, 2012 IL App (2d) 110222, defendant contends that "[t]his Court has recently re-examined the requisite level of obstruction needed for a conviction in light of the Illinois Supreme Court's holding in *People v. Baskerville*, 2012 IL 111056." In *Baskerville*, a police officer observed the defendant's wife, Christine Baskerville, driving on a county highway. The officer recognized Christine and believed that her license had been suspended. The officer knew where Christine lived, and he drove to her home. As the officer arrived he saw Christine pull into the driveway, step out of the vehicle, and walk toward the house. Although the officer asked Christine to return to her vehicle, she continued into the house. The defendant then emerged from the house and spoke with the officer. The officer indicated that he had observed Christine driving on a suspended license. The officer asked the defendant to return to the house and to bring Christine outside. The defendant stated that he had been driving and that Christine was not home. The defendant then entered the house. When

he reemerged, he gave the officer permission to enter the house to look for Christine, but the officer declined to do so. The defendant was charged with obstruction on the basis that he provided false information to the officer.

¶ 20    Confronted with the above facts, the *Baskerville* court offered the following observations about the scope of the term "obstruction":

"Based upon the plain language of the statute, section 31-1 does not particularize all of the types of obstructive conduct that may fall within its purview. [Citation.] Rather, the legislature has chosen to frame the provision here in broad terms within the confines of free speech, rights of assembly and other constitutional concerns. *Although a person may commit obstruction of a peace officer by means of a physical act, this type of conduct is neither an essential element of nor the exclusive means of committing an obstruction.* The legislative focus of section 31-1(a) is on the tendency of the conduct to interpose an obstacle that impedes or hinders the officer in the performance of his authorized duties." (Emphasis added.) *Baskerville*, 2012 IL 111056, ¶ 23.

¶ 21    Ultimately, however, the *Baskerville* court concluded that the defendant's lie about his wife's whereabouts did not rise to the level of obstruction:

"In analyzing the factual scenario, the false statement only has legal significance if it was made in relation to an authorized act within the officer's official capacity and if the false information actually impeded an act the officer was authorized to perform. [Citation.] At no point did defendant's false statement that Christine was not home hinder [the officer] in executing the traffic stop. Even if [the officer] had probable cause to arrest Christine, and Christine thwarted his ability to arrest her in a public place, defendant consented to a search and [the officer] chose not to enter the home. Therefore, there was no evidence that defendant's statement hampered or impeded the officer's progress in any way." *Id.* ¶ 35.

¶ 22    *Taylor* arose from a street encounter between a De Kalb police officer and the defendant, Donnell Taylor. The officer recognized the defendant from prior encounters but was not completely certain that the defendant was, in fact, Donnell Taylor. The officer had previously been made aware that there was a warrant for Taylor's arrest. When the officer asked the defendant for identification, the defendant indicated that he did not have any with him and gave a false name to the officer. However, the officer was quickly able to confirm the defendant's identity and place him under arrest. The defendant was convicted of obstruction of justice on the basis that he provided false information to the officer. This court reversed the conviction, reasoning as follows:

"In our view, *Baskerville* confirms that the relevant issue in weighing a sufficiency-of-the-evidence challenge to a conviction for obstruction of justice is whether the defendant's conduct actually posed a material impediment to the administration of justice. Applying that standard here, we find that [the defendant's] initial giving of a false name to [the officer] and his denial that he had identification did not materially impede [the officer's] arrest of [the defendant]. By all accounts, the entire encounter took no more than a few minutes. Although [the officer] himself testified that he was not '100 percent sure' of [the defendant's] identity, he conceded that he was 'pretty sure.' *** [I]t is clear that [the defendant's] initial lies to [the officer] did not deter [the officer] from arresting him: [the officer] arrested [the defendant] almost immediately despite [the defendant's] false statements. [The

officer's] caution in checking the false name [the defendant] gave against the computer database was commendable, but it did not significantly delay the arrest. *** [The defendant's] false statements did not actually interfere with or materially impede the police investigation." *Taylor*, 2012 IL App (2d) 110222, ¶ 17.

Relying on *Taylor*, defendant argues that, because Fichtel "immediately" arrested her "despite her alleged refusal to exit her car," her refusal did not materially impede Fichtel in the performance of an authorized act. We disagree. Neither *Baskerville* nor *Taylor* categorically held that the degree of obstruction is measured only by the amount of time necessary for a peace officer to overcome the defendant's conduct. The considerations of officer safety that were at the heart of our decision in *Synnott* were not present in *Baskerville* and *Taylor*. Those considerations are paramount here. There was sufficient evidence for the jury to conclude that defendant repeatedly refused Fichtel's direction to exit her vehicle and that, as a result, Fichtel was forced to place his own safety at risk. Pursuant to *Synnott*, such conduct qualifies as obstruction.

¶ 23    For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 24    Affirmed.