2020 IL App (2d) 180169-U
No. 2-18-0169
Order filed August 4, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CM-2966 |
| RANDOLPH L. HOPP, | ) ) | Honorable Keith A. Johnson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Justices Schostok and Bridges concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Defendant was proved guilty beyond a reasonable doubt of obstructing a peace officer as he attempted to enter the home of defendant's mother in response to a domestic-disturbance call.  There was no merit to defendant's argument that the officer was not authorized to enter the home, as defendant's mother had given the officer consent to enter before defendant arrived at the threshold and purportedly objected to the entry.  Further, defendant's argument that the State had to prove that defendant knew that the entry was authorized, *i.e.*, proper under the fourth amendment, was absurd as it would allow defendant's ignorance of constitutional law to stand as a full defense to the charge.

¶ 2    After a bench trial, defendant, Randolph L. Hopp, was convicted of resisting or obstructing

a peace officer (720 ILCS 5/31-1(a) (West 2016)) and sentenced to 12 months of conditional

discharge. On appeal, he contends that he was not proved guilty beyond a reasonable doubt. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      The complaint against defendant alleged that he knowingly obstructed Elgin police officer David Mendiola in the performance of an authorized act within his official capacity, investigating a "domestic dispute call for service." Specifically, defendant knew that Mendiola was a peace officer executing his official duties and bumped up against him in an attempt to prevent him from entering the home of Nola Hopp, defendant's mother, after she had allowed Mendiola in.

¶ 5      At trial, Mendiola testified on direct examination as follows. On the morning of August 13, 2016, he went to a single-family house on Pamela Drive, after a neighbor reported a man and a woman yelling. When he arrived, he was in full uniform. Mendiola stood on the stoop and knocked on the front door. An elderly woman, Nola, answered. She was alone. He asked her permission to enter the home. She allowed him in.

¶ 6      Mendiola testified that, as soon as he started to enter the house, defendant rushed forward. Mendiola put up his arms. Defendant pushed his arm into his chest and bumped him. The testimony continued:

> "Q. Okay. So [defendant] was in the house then when you first saw him?
>
> A. Yes.
>
> Q. All right. Now, were you able to actually enter the house before the defendant approached you and made physical contact with you?
>
> A. The threshold. So I—I don't remember if there was a storm door there, maybe in between that area. So I don't know if that's actually the home or not. I guess so.
>
> Q. Did you take a step across where the door would close, the door frame?

A. No. I think it's right at where the door closes. So it's like right on the line.

Q. Okay. So you were still on the stoop at this time getting ready to enter the home, is that fair to say?

A. I was stepping up."

¶ 7 Mendiola testified that defendant's torso contacted his chest. At that point, he told defendant that he was under arrest for obstructing a peace officer, and he grabbed defendant's wrist. They were still located "[r]ight around that same threshold doorway area." Eventually, Mendiola handcuffed defendant and sat him down on the living-room couch. He saw that defendant was wearing only a towel. Mendiola told defendant why he had arrested him. Mendiola also retrieved some clothing and bond money for defendant.

¶ 8 Mendiola testified that he went to Pamela Drive to investigate the domestic dispute that the neighbor reported. Defendant's act of striking him with his torso delayed his investigation, as did explaining the arrest and obtaining clothing and bond money.

¶ 9 Mendiola testified on cross-examination as follows. All the things that he did upon arresting defendant could have been done after he completed his investigation. However, he attended to defendant first because he was concerned about his well-being after the struggle. Asked whether he nonetheless chose to delay his investigation to get clothing and bond money, Mendiola testified, "Yeah, I—I don't know, I don't know."

¶ 10 Mendiola testified that the neighbor's call did not mention injuries or anything breaking. When he arrived, he heard no yelling or anything breaking. Neither Nola nor defendant reported any injuries. Mendiola did not recall what defendant said to him as he started to enter the house.

¶ 11 Mendiola testified on redirect that the neighbor's call did not say whether anyone had been injured. Defendant was 5 or 10 feet away when he rushed at Mendiola. He was yelling angrily,

but Mendiola could not make out his words. Between when Nola allowed him in and defendant bumped him, "less than a minute; thirty seconds" elapsed. At that point, Nola had not disclosed any details about her argument with defendant. Therefore, when defendant attacked him, Mendiola had been unable to complete his investigation and did not know whether Nola had any injuries or whether there were any ongoing threats. On re-cross, Mendiola testified that, when defendant approached, he had not intended to arrest him.

¶ 12    Defendant testified on direct examination as follows. On the morning of August 13, 2016, he was in the basement when he heard the doorbell ring. He came upstairs to answer it, but Nola did so first. Defendant saw that she had unlocked and opened the storm door and the inner door. Mendiola was standing on the stoop and holding the storm door open. As Mendiola started to enter the house, defendant was standing on the threshold. Mendiola put his left foot onto the threshold, pulled back, then charged defendant, pushing him onto the floor and overturning a lamp.

¶ 13    Defendant testified that, before stepping into the house, Mendiola asked his permission to enter. Defendant told him "no[,] not without a warrant." Defendant did not yet know why Mendiola was there. He had argued with Nola, but it did not become physical. After restraining defendant, Mendiola asked Nola and defendant whether they were injured and about the argument.

¶ 14    Defendant testified on cross-examination as follows. When he came upstairs, he saw Mendiola standing on the stoop and holding the storm door open. Nola was "some distance back" from the doorway. He did not know how long Nola had been interacting with Mendiola or whether she had said anything to him. At the time, defendant was wearing a towel around his waist, socks, and either shoes or slippers. Defendant testified on redirect that it took him less than a minute to go from the basement to the living room near the front door.

¶ 15    The parties stipulated that, on August 13, 2016, defendant resided at the Pamela Drive address and still did at the time of trial.

¶ 16    In rebuttal, Mendiola testified that he never rushed at defendant or tackled him to the ground.  A lamp got knocked down when defendant hit it with his arm.  On re-cross, Mendiola testified that his contact with defendant occurred while defendant was inside the house.

¶ 17    The judge found defendant guilty.  He explained that the State had to prove that (1) Mendiola was a peace officer; (2) defendant knew that Mendiola was a peace officer; and (3) defendant knowingly obstructed Mendiola in the performance of an authorized act within his official capacity.  The first two elements were "not really in dispute here."  On the third element, Mendiola's account of the incident was credible and defendant's was not.  Therefore, the evidence showed that, when Mendiola rang the doorbell, Nola answered.  She appeared to be in distress.  Mendiola asked her whether he could enter the house to investigate the report that he had received.  Nola consented.  Approximately 30 seconds to "somewhere less than one minute" later, as Mendiola was walking into the house, defendant rushed up, yelled something, and rushed at Mendiola, pushing and bumping him.

¶ 18    The judge held that *Georgia v. Randolph*, 547 U.S. 103 (2006), did not apply.  *Randolph* allows one cotenant to negate another cotenant's consent to a warrantless entry into a home, but only if the former "is in fact at the door and objects," and not if he is merely nearby and "not invited to take part in the threshold colloquy."  Here, as in *People v. Parker*, 386 Ill. App. 3d 40 (2007), the objecting cotenant was not present when the consenting cotenant allowed the officer in.  When defendant objected to the entry, Nola had already given her consent and Mendiola had acted on it; he had "effectively entered the home when the Defendant then rushed at him, yelling something, and chest bumped him."  The judge continued:

"Even assuming for the sake of argument that the Defendant was yelling that Officer Mendiola could not enter the home without a warrant, that objection would have come just a little too late at that point. The court finds that Officer Mendiola was lawfully in the home performing an authorized act within his official capacity, which was his investigation into the reported domestic disturbance."

¶ 19    The judge found finally that defendant's physical resistance to Mendiola imposed an obstacle that "impeded, hindered, interrupted, prevented, or delayed" Mendiola in the performance of his duties. Therefore, the third element, knowing obstruction, had been proved. Defendant was found guilty. After he was sentenced to 12 months' conditional discharge, defendant timely appealed.

¶ 20                                II. ANALYSIS

¶ 21    A person commits resisting or obstructing a peace officer when he knowingly resists or obstructs the performance by one he knows to be a peace officer of any authorized act within his or her official capacity. 720 ILCS 5/31-1(a) (West 2016). Defendant contends that the State failed to prove beyond a reasonable doubt that (1) Mendiola was engaged in an authorized act; (2) defendant *knowingly* obstructed Mendiola's performance of that act; and (3) defendant materially impeded Mendiola's investigation.

¶ 22    In assessing the sufficiency of the evidence, we ask whether, after viewing all of the evidence in the light most favorable to the State, any rational fact finder could have found the elements of the offense proved beyond a reasonable doubt. *People v. Ward*, 154 Ill. 2d 272, 326 (1992). The fact finder is responsible for determining the witnesses' credibility, weighing their testimony, and deciding on the reasonable inferences to be drawn from the evidence. *People v.*

*Hill*, 272 Ill. App. 3d 597, 603-04 (1995). It is not our function to retry the defendant. *People v. Lamon*, 346 Ill. App. 3d 1082, 1089 (2004).

¶ 23 The trial court found that Mendiola's entry was an authorized act within his official capacity. The court reasoned that (1) the warrantless entry was authorized by Nola's consent, which she gave before defendant expressed his refusal, and (2) the entry was within Mendiola's official capacity because it was part of his investigation of the reported domestic disturbance. Defendant contests the first proposition only. He asserts that, by telling Mendiola that he did not consent to the entry, he negated Nola's consent. Defendant observes that an unconstitutional entry into a residence is not an authorized act and that a person may use reasonable force to resist it. *People v. Jones*, 2015 IL App (2d)130387, ¶ 11; *People v. Hilgenberg*, 223 Ill. App. 3d 286, 287 (1991). He reasons that, before Mendiola entered the home, he knew that he would do so only over defendant's objection.

¶ 24 Defendant does not dispute the trial judge's finding that he had not been present when Nola permitted Mendiola to enter. Defendant does, however, challenge the findings that he did not object and that, even if he did, Mendiola had already entered the house. Adhering to our obligation to consider the evidence in the light most favorable to the State, we reject defendant's challenges.

¶ 25 As to the first challenge, Mendiola testified that he heard defendant yell something but could not make it out. Thus, the judge properly found that, although defendant rushed at Mendiola and said something hostile, he did not communicate an objection to Mendiola's entry into the house. For all Mendiola knew, defendant might have been intoxicated or in a blind rage, intending to assault Mendiola wherever he was. Perhaps Mendiola could have interpreted this to imply that defendant was refusing Mendiola entry into the home, but the judge did not draw this inference.

¶ 26    In any event, the evidence supported the judge's finding that, within a few seconds after Nola gave him permission to enter, Mendiola had effectively done so[1], such that defendant objected too late. Mendiola testified that he was standing on the stoop when Nola gave permission and that defendant did not make physical contact with Mendiola for another 30 seconds or more. This timeline supported the trial court's finding that, by the time defendant yelled at Mendiola, he was effectively within the home and in the process of going further inside. Mendiola testified that he had stepped onto "[t]he threshold" and was "right at where the door closes. So it's right on the line." He was not still on the stoop but was "stepping up." At the least, therefore, the evidence supported finding that, when defendant voiced his objection (whatever it was), Mendiola had

---

[1] Curiously, in his closing argument, defendant contended that Mendiola *had* entered the house by the time that he confronted him and bumped him.

> "[T]he [S]tate may argue, well, he never made it into the house. He never entered into the house. Well *** the testimony was that he was beginning to walk into the threshold. Well, if [defendant] never exited his house, how could he have bumped Mendiola without Mendiola being in that threshold?"

Further, he argued, once the storm door was open, Mendiola was "within *** the curtilage of the home or within the boundaries of the home. *** [T]he door is like a bright line ***. The most exterior door would be that." He continued, "If that door is open and Officer Mendiola is standing within that door, *** he is within the home." To the extent that the doctrine of invited error can apply to a reasonable doubt claim (which we do not explore here), it would appear to bar defendant's challenge.

entered the house and, acting on Nola's consent, was within a one-second walk from where the inner door, when closed, would separate the inside of the house from the exterior.

¶ 27    The point of the foregoing is not to establish the sequence of relevant events with the precision expected of an NFL replay official, but to show that the trial judge did not err in finding that, when defendant objected to Mendiola's entry, *Randolph*'s "threshold colloquy" (*Randolph*, 547 U.S. at 121) had ended without him.  Thus, he could not avail himself of *Randolph*'s holding that one occupant's permission does not authorize the intrusion "when the other [occupant], *** is present at the scene and expressly refuses to consent" (*id.* at 106).

¶ 28    Defendant cites authority that applies *Randolph* in contexts materially different from the one here.  Every fourth-amendment case turns on its own facts, and nothing in those opinions undermines the judgment that was entered under the unique facts of this case.

¶ 29    We hold that the State proved beyond a reasonable doubt that Mendiola was performing an authorized act when he entered the house in reliance on Nola's permission.

¶ 30    We turn to defendant's second contention: that the State did not prove beyond a reasonable doubt that he *knowingly* obstructed Mendiola's performance of an authorized act.  Defendant argues that the State failed to prove that, when he bumped Mendiola and thus physically obstructed his entry into the house, he did so knowing that the entry was permissible under the fourth amendment.  Thus, defendant's argument presupposes that (1) the "authorized act" within Mendiola's official capacity was the entry into the house; and (2) in order to prove that defendant knowingly obstructed the entry, the State had to show not only that defendant knew that he was impeding Mendiola's entry but also that he knew that the entry itself was "authorized" because it did not violate the fourth amendment.  Defendant is correct that the complaint alleged that he obstructed Mendiola's investigation of the domestic disturbance call specifically by bumping

against him in an attempt to prevent his entry into the home. However, defendant is mistaken that the State had to prove that he knew that the entry was "authorized," *i.e.*, constitutional.

¶ 31 We note that a conviction under the applicable statute requires only that the defendant "*knowingly \*\*\* obstruct*" (emphasis added) (720 ILCS 5/31-1(a) (West 2016)) an officer who is performing an authorized act that is within his official capacity. We must give this language its plain and ordinary meaning without reading in exceptions or limitations. See *People v. Robinson*, 172 Ill. 2d 452, 462 (1996). Therefore, as far as the knowledge element of the offense is concerned, the statute requires proof only that the person charged knew that he was obstructing the officer's act and not that he knew that the act was legally authorized.

¶ 32 Further, in this case, requiring proof that defendant knew that Mendiola's entry into the residence was authorized because it conformed to the fourth amendment would create an absurdity. See *People v. Brown*, 2013 IL 114196, ¶ 36 (we presume that, in enacting a statute, the legislature did not intend to create absurdity, inconvenience, or injustice). The State would have had to prove that defendant knew fourth amendment jurisprudence well enough to realize that Mendiola's entry was constitutional. Thus, his ignorance of the law would be a full defense to the charge. Here, although Mendiola and defendant gave conflicting accounts of who charged at whom, the trial court reasonably found that defendant knowingly acted to impeded Mendiola's entry.

¶ 33 We turn to defendant's final contention on appeal: that the State failed to prove beyond a reasonable doubt that he materially impeded Mendiola's investigation. Defendant notes that the State was required to prove that defendant's act materially impeded Mendiola in the performance of his authorized duties. *Baskerville*, 2012 IL 111056, ¶ 23; *People v. Comage*, 241 Ill. 2d 139, 150 (2011). Defendant emphasizes Mendiola's semi-concession—"Yeah, \*\*\* I don't know"—

that everything that he did after arresting defendant, including providing clothing and bond money, could have been put off after he first completed his investigation.

¶ 34   We conclude that the evidence was sufficient, if minimally, to prove a material impediment.  By rushing at and bumping Mendiola, defendant diverted him from continuing his investigation by further questioning Nola and then questioning defendant.  This interruption was not lengthy in itself, but it had ramifications.  As defendant must have anticipated, his attack on Mendiola required the latter to pause further to ensure that defendant did not engage in further acts that could endanger Mendiola (and possibly Nola and defendant himself as well).  Even if retrieving clothing and money could have waited, the restraint of defendant directly flowed from his obstructive act.

¶ 35   Moreover, we have recognized that the degree of impediment comprises not merely the amount of time necessary for a peace officer to overcome the defendant's conduct but also considerations of officer safety.  *People v. Shenault*, 2014 IL App (2d) 130211, ¶ 22.  Defendant impeded Mendiola not only by bumping him and requiring Mendiola to restrain him, but also by presenting a potential danger that Mendiola would have had to divert his investigation to address. We conclude that the State proved material impediment.

¶ 36                                III. CONCLUSION

¶ 37   For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 38   Affirmed.