2022 IL App (2d) 210620-U
No. 2-21-0620
Order filed August 26, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CF-169 |
| SCOTT M. BROWN, | ) ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice Bridges and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:   (1) Defendant was proved guilty of operating an uninsured motor vehicle causing bodily harm to another person, where defendant's out-of-court statement that he was uninsured at the time of the accident was properly corroborated, thereby satisfying the *corpus delicti* rule.   (2) Defendant's 30-month probation period would be reduced to 24 months, the statutory maximum for the offense.

¶ 2    Defendant, Scott M. Brown, appeals his conviction and sentence on the offense of operating an uninsured motor vehicle causing bodily harm to another person (625 ILCS 5/3-707(a-5) (West 2018)).   He contends that (1) the State did not establish the *corpus delicti* for the offense and (2) the trial court improperly sentenced him to a probation period longer than the statutory

maximum of 24 months. We affirm the conviction because the State established the *corpus delicti* with corroborating evidence. However, we reduce defendant's probation to the statutory maximum of 24 months.

¶ 3                                  I. BACKGROUND

¶ 4      The State charged defendant by criminal complaint with failure to report an accident causing personal injury (625 ILCS 5/11-401(b) (West 2018)) and operating an uninsured motor vehicle causing bodily harm to another person.[1] Defendant opted for a bench trial.

¶ 5      At around 8:30 a.m. on December 2, 2019, Alma Gomez was driving on Summit Street in Elgin. As she approached the intersection with a side street, a vehicle pulled out from the side street and struck the passenger's-side front end of her vehicle. The driver did not stop, provide any information, or offer Gomez any aid or assistance. Gomez suffered injuries to her shoulder and neck and was transported to a hospital. At the time of trial, she was still in pain and had difficulty raising her right arm.

¶ 6      Lysbel Morales witnessed the accident. She was sitting in her vehicle on Preston Avenue waiting to enter Summit Street. Across the intersection, another vehicle, an SUV, was sitting at a stop sign on Preston Avenue. According to Morales, the traffic on Summit Street had no stop sign at the intersection with Preston Street. The SUV across from Morales pulled onto Summit Street and collided with another SUV driving on Summit Street. The SUV that pulled out from Preston Avenue was much larger than the SUV it struck. Morales believed, but was not positive, that the

---

[1]Defendant was also charged in case No. 20-TR-3555 with failure to yield at a stop sign (625 ILCS 5/11-904(b) (West 2018)). Defendant was found guilty of that offense but has not appealed.

SUV that pulled out was silver; she recalled telling a police officer that the SUV was "gray or silver." According to Morales, both SUVs were damaged in the collision. The SUV that pulled out was damaged "towards the front to mid-section" of its passenger side, and it drove off after the collision.

¶ 7    Officer Robert Henke of the Elgin Police Department responded to the accident scene. Upon arriving, he saw a Nissan Armada with front-end damage. According to Officer Henke, there are four lanes of traffic on Summit Street, two in each direction, and a stop sign on both northbound and southbound Preston Avenue, where it intersects Summit Street. Officer Henke collected vehicle debris from the scene. Officer Henke identified in court the debris he collected; he described it as a "mangled piece of the headlights." According to Officer Henke, who was at the scene for about an hour, no one returned to the scene to say they were involved.

¶ 8    Mike Kelley, a service advisor at Crash Champions, testified that, on December 18, 2019, defendant brought in his silver Chevrolet Tahoe for repairs. Kelly took several photos of the Tahoe that showed damage to the passenger's-side front end (the fender and hood) and the passenger's-side front wheel. He identified another photo as showing a broken passenger's-side headlamp. Based on his 22 years as a car mechanic, he opined that it matched the missing headlamp from defendant's Tahoe.

¶ 9    Stacy Berry, the mother of defendant's son, testified that, on the morning of December 2, 2019, defendant called to say that he wanted to come by Berry's house to pick up Berry and their son to take him to school. According to Berry, school started at 8:30 a.m. After defendant dropped their son off at school, at about 8:40-8:45 a.m., defendant dropped her off at her home. Defendant drove off alone.

¶ 10    About 15-to-20 minutes later, defendant called Berry.  According to Berry, defendant was "pretty upset" and "basically crying."  He told Berry that he had just been in a car accident—"some guy had ran [*sic*] into him."  Defendant "asked [Berry] about insurance information."  According to Berry, defendant told her that "his previous insurance company had lapsed."  Because Berry had recently obtained insurance, he "wanted the insurance information that [Berry] had used."  Based on that conversation, Berry understood that defendant did not then have insurance.  Later, defendant told Berry that, after the accident, he had obtained insurance from GEICO.

¶ 11    Sometime "on or after December 2nd [2019]," defendant spoke to Berry by phone.  Defendant told her that he would not truthfully report where the accident happened but would report that it happened "in a different county, in a high-risk traffic accident area."

¶ 12    At one point, when defendant and Berry were driving together, defendant drove her to where the accident occurred.  According to Berry, this intersection was Preston Avenue and Summit Street.

¶ 13    On cross-examination, Berry admitted that, beginning in February of 2020, she and defendant were involved in custody litigation involving their son.  There was also "pending litigation" between defendant and Berry's mother.

¶ 14    Officer John Cox, a traffic investigator for the Elgin Police Department, conducted a follow-up investigation of the accident.  According to Officer Cox, an investigator with GEICO told him that defendant might have been involved in the December 2, 2019, accident.  Cox's review of Elgin police records showed that defendant did not report being in an accident on December 2, 2019.

¶ 15    Officer Cox also learned that Berry might have information about the accident.  Officer Cox met with Berry at her workplace.  Berry showed Officer Cox several text messages between

her and defendant on December 2, 2019. Those messages, which were entered into evidence, showed that, at about 9:37 a.m. on December 2, 2019, defendant sent Berry a photo of the front-end damage to his vehicle. Defendant also texted Berry asking for insurance information. Berry replied by sending defendant an address and map for a GEICO office in Schaumburg.

¶ 16　Officer Clayton Johnson of the Hoffman Estates Police Department testified that, at around 11:18 p.m. on December 6, 2019, he met with defendant regarding a traffic accident. According to Officer Johnson, defendant told him that the accident occurred at about 10:45 p.m. on December 6, 2019, in Hoffman Estates. Defendant provided proof that GEICO insured him, although Officer Johnson did not record the effective date. Defendant's vehicle was a silver Chevy Tahoe. The damage was to the passenger's-side front bumper. Defendant told Officer Johnson that, while driving, a vehicle pulled out in front of him, and he could not avoid the collision.

¶ 17　The trial court found defendant guilty of both offenses and denied his motion for a new trial. The court sentenced him to 30 months' probation on each conviction. Defendant did not file a motion to reconsider his sentence before filing this timely appeal.

¶ 18　　　　　　　　　　　　　II. ANALYSIS

¶ 19　On appeal, defendant contends that, as to his conviction of operating an uninsured motor vehicle causing bodily harm to another person, (1) the State did not establish the *corpus delicti*, because there was no evidence to corroborate his purported admission to Berry that he was uninsured when the accident occurred, and (2) his 30-month probation term must be reduced to 24 months, the maximum probation term for a Class A misdemeanor. We reject the first contention but accept the second.

¶ 20　A reviewing court will not set aside a conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Shenault*, 2014

IL App (2d) 130211, ¶ 14 (citing *People v. Collins*, 106 Ill. 2d 237, 261 (1985)). When reviewing a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Shenault*, 2014 IL App (2d) 130211, ¶ 14. The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and determining what inferences to draw. A reviewing court ordinarily will not substitute its judgment on those matters. *Shenault*, 2014 IL App (2d) 130211, ¶ 14. This same standard of review applies regardless of whether the evidence is direct or circumstantial or whether the defendant received a bench or jury trial. *People v. Cooper*, 194 Ill. 2d 419, 431 (2000).

¶ 21    The elements of the offense of operating an uninsured motor vehicle causing bodily harm to another person are that the defendant (1) operated a motor vehicle without the required liability insurance, and (2) caused, as a proximate result of the operation of the motor vehicle, bodily harm to another person. 625 ILCS 5/3-707(a-5) (West 2018).

¶ 22    Here, there is no issue that defendant operated a vehicle that caused bodily injury to another person. Instead, focusing on the first element of the offense, defendant argues that, because the State did not corroborate defendant's out-of-court-statement to Berry that he was uninsured when the accident occurred, the State failed to establish the *corpus delicti* of the offense. We disagree.

"The *corpus delicti* of an offense is simply the commission of a crime. Along with the identity of the person who committed the offense, it is one of two propositions the State must prove beyond a reasonable doubt to obtain a valid conviction. In general, the *corpus delicti* cannot be proven by a defendant's admission, confession, or out-of-court statement alone. When a defendant's confession is part of the *corpus delicti* proof, the State must also provide independent corroborating evidence. [Citation.]

To avoid running afoul of the *corpus delicti* rule, the independent evidence need only *tend to show* the commission of a crime. It need not be so strong that it alone proves the commission of the charged offense beyond a reasonable doubt. If the corroborating evidence is sufficient, it may be considered, together with the defendant's confession, to determine if the State has sufficiently established the *corpus delicti* to support a conviction. [Citations.]." (Emphasis in original.) *People v. Lara*, 2012 IL 112370, ¶¶ 17-18.

¶ 23    Here, Berry testified that just after 9 a.m. on December 2, 2019, defendant called her. He was upset and told her he had just been in a car accident. Defendant sought insurance information from Berry and told her that his insurance had lapsed. Later, defendant told Berry that, after the accident, he had obtained insurance from GEICO.

¶ 24    Of course, those incriminating statements by defendant could not alone establish a violation of section 3-707(a-5). However, there was ample corroborating evidence, the most significant of which was that defendant left the scene of the accident without providing any information and that he never filed a police report. Because that gave rise to a reasonable inference that defendant was not insured, it corroborated defendant's statements. Further, on December 6, 2019, defendant falsely reported that he had just been in a traffic accident in Hoffman Estates. In doing so, he provided evidence of insurance from GEICO, the company Berry identified on December 2, 2019, when defendant asked for her insurer and remarked that his insurance had lapsed. The fact that defendant obtained insurance from GEICO after speaking to Berry on December 2, 2019, was corroboration of Berry's statement that did not have insurance on December 2, 2019. On December 6, 2019, defendant reported his auto accident in Hoffman Estates and presented GEICO insurance to the reporting officer on that date, just as Berry said he told her he was going to do. Although defendant points out that the State offered no direct evidence of the effective date of the

GEICO insurance, such evidence was not necessary, as the foregoing evidence was sufficient to establish that defendant did not have such insurance on the date of the December 2, 2019, accident. Because there was independent evidence that defendant did not have insurance on December 2, 2019, defendant's statements to Berry were properly corroborated. Given defendant's statements and their corroboration, the State proved beyond a reasonable doubt that defendant was operating a motor vehicle without the required insurance when he struck and injured Gomez on December 2, 2019.

¶ 25    The State suggests that the *corpus delicti* rule does not apply to a defendant's statements to non-law enforcement persons, such as Berry, without citing authority directly supporting that proposition. Contrary to the State's argument, our supreme court stated in *Lara* that the *corpus delicti* rule applies to a defendant's admission or out-of-court statement. See *Lara*, 2012 IL 112370, ¶ 17. Moreover, nothing in *Lara* restricts the *corpus delicti* rule to statements made to law enforcement agents. Nonetheless, because we conclude that the State properly corroborated defendant's statements to Berry, we need not decide this issue.

¶ 26    We next address whether the trial court properly sentenced defendant to 30 months' probation on his conviction for operating an uninsured motor vehicle causing bodily harm to another person. The State concedes that, because the offense is a Class A misdemeanor, the court should not have sentenced defendant to any more than 24 months' probation. We agree. See 625 ILCS 5/3-707(a-6) (West 2018) (violation of section 3-707(a-5) is Class A misdemeanor); 730 ILCS 5/5-4.5-55(d) (West 2018) (maximum term of probation for Class A misdemeanor is two years). Thus, we reduce to 24 months defendant's probation period on his conviction for operating an uninsured motor vehicle causing bodily harm to another person. See Ill. S. Ct. R. 615(b)(4) (eff. Jan. 1, 1967).

¶ 27                                     III. CONCLUSION

¶ 28     For the reasons stated, we (1) affirm defendant's conviction of operating an uninsured motor vehicle causing bodily harm to another person and (2) reduce to 24 months his term of probation for that conviction.

¶ 29     Affirmed as modified.