No. 3-10-0122

Opinion filed January 21, 2011

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2011

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the Ninth Judicial Circuit Fulton County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 09-CM-227 |
| JOSEPH J. BERARDI, | ) ) | The Honorable Edward R. Danner, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McDADE delivered the judgment of the court, with opinion.
Justices Holdridge and O'Brien concurred in the judgment and opinion.

**OPINION**

The State charged defendant, Joseph J. Berardi, with resisting a peace officer in violation

of section 31-1 of the Criminal Code of 1961 (720 ILCS 5/31-1 (West 2006)). Following a trial,

a jury found defendant guilty of the charge in the information. The circuit court of Fulton County

sentenced defendant to perform community service and imposed fines and costs. For the reasons

that follow, we reverse defendant's conviction.

BACKGROUND

The amended information charged defendant with the following conduct:

"[D]efendant knowingly resisted the performance of W.D. Taylor of an authorized act within his official capacity, being the securing of a private office space at Canton City Hall, knowing W.D. Taylor to be a peace officer engaged in the execution of his official duties, in that he physically remained in such office space and refused to exit after being asked repeatedly to exit ***."

Our court has construed section 31-1 as follows:

"Given a reasonable and natural construction, [it] do[es] not proscribe mere argument with a policeman about the validity of an arrest or other police action, but proscribe[s] only some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties, such as going limp, forcefully resisting arrest or physically aiding a third party to avoid arrest." *People v. Raby*, 40 Ill. 2d 392, 399 (1968) (citing *Landry v. Daley*, 280 F. Supp. 938, 959 (N.D. Ill. 1968)).

See also *People v. Lauer*, 273 Ill. App. 3d 469, 474 (1995).

The facts adduced at trial are that at the time of the alleged offense, defendant was an alderman for the city of Canton. On March 31, 2009, Canton had published a notice in a local newspaper that the city's budget was then available for viewing during normal business hours. On the date of the offense, Friday, April 3, 2009, defendant had called Canton city hall and requested a copy of Canton's annual budget. An election was scheduled in Canton on the following Tuesday. At trial, defendant testified that he wanted "to make sure the public has an opportunity

to see [the budget] because this is Friday. And if you don't get it Friday, then comes Monday, and you only got [*sic*] a day to go through a 400 page budget."

Defendant was informed that he could come to city hall to obtain a copy of the budget. Shortly thereafter, defendant received a call from Canton's budget director contradicting both the notice in the paper and the information defendant obtained from the phone call. The budget director informed defendant he could not obtain a copy of the budget at that time.

The same day defendant went to Canton city hall. Defendant's wife and friend, who are not parties to these proceedings, accompanied him. Defendant's wife prepared a video recording of the events that transpired when defendant went to city hall concerning the budget. The recording is an exhibit in the record on appeal. Upon his arrival, defendant proceeded directly to the budget director's office. The budget director's office is located adjacent to a central office area. The budget director's office can be locked with a key. Access to the central office area is through a locked door. The locked door to the central office area requires a key fob for entry. Defendant did not possess a key fob for access to the central office area or keys for any of the internal offices.

The budget director, John Favorita, informed defendant that the mayor had directed him not to distribute copies of the budget until the following Monday. Defendant and his entourage proceeded to the city clerk's office where they again requested a copy of the budget. A deputy clerk informed defendant he would have to discuss any issues concerning the budget with the budget director. After directing defendant back to the budget director, the deputy clerk left her own desk, went to the budget director's office, and called police to report a disturbance and to express her belief there was a need for security in the building.

The chief of the Canton police department, W.D. Taylor, received the call at approximately 3:03 p.m. A short time later, Chief Taylor arrived with another uniformed officer. At that time, defendant's trio were in a hallway or lobby outside the central office area. Chief Taylor proceeded directly to the budget director's office and spoke with the budget director and the clerk. After speaking with Taylor, the clerk left the office area. The budget director asked Taylor if he could leave. Chief Taylor responded that he could leave and ordered the other officer to escort him out. The budget director locked his office and exited the office area.

Chief Taylor went to an office used by the city's attorney to determine if and when the budget would become available. The city attorney was not in her office. Later, Taylor returned to the area where defendant and his companions were recording video through a window in the locked door to the budget director's office. Defendant testified that he was attempting to obtain an image of copies of the budget in boxes in the office, just as a reporter was then doing.

Taylor testified that he is in charge of security for the entire building but that he does not have keys to the individual offices. Taylor controls the key fob system. Taylor testified that, at the time he returned to find defendant recording images in the budget director's office, he told defendant he would have to leave. Taylor testified as follows:

"I asked him *** told him two or three different times that he needed to leave. I wasn't going to babysit him in that office area, and that I was going to lock it up since there weren't any employees there. And he told me that he wasn't going to leave and that he had a right to be there ***.

And I said, well, you need to leave and I said it several

times.

* * *

And I said if you don't leave, you are going to get arrested.

And he said I'm not leaving. And I said, well, you're under arrest."

Defendant testified that Chief Taylor approached him. Defendant told Taylor that "we want the budget. The budget is supposed to be ready and I want to make sure the public has an opportunity to see it ***." Taylor responded that there was nothing he could do. According to defendant's testimony, the next time Taylor said anything was after defendant asked the city treasurer, Aaron Anderson, to enter Favorita's office to inquire whether he could obtain the budget. Defendant testified that Chief Taylor told Anderson "you don't have to go in there because he said he didn't have it." Anderson entered Favorita's office and reported to defendant that Favorita told him both that he (Favorita) did not have a budget and that the mayor had instructed Favorita not to hand out the budget. Defendant testified that the city's finance chairman also entered Favorita's office, requested the budget, and was refused.

A short time later, Favorita left the office with another police officer. That officer, Mike Eveland, testified that when he returned from escorting Favorita from the office, he observed defendant videotaping through the window. Next, "Chief Taylor went in and advised him that he needed to leave the office, and he was not going to be allowed to remain in the office area while the employees were not present." According to Eveland's testimony, defendant refused to leave, "stating he was not going to leave without *** the budget." According to Eveland, Chief Taylor requested defendant leave "several more times." Defendant's wife testified that Taylor asked defendant to leave "[t]wice probably."

-5-

Chief Taylor advised defendant that he was welcome to stand outside in the public hallway. According to Eveland, "defendant refused to do so." "Chief Taylor requested again that he leave. *** He still remained standing in the office, would not leave. Chief Taylor finally advised him that if he did not leave the office that he was going to be arrested." Defendant responded "that Chief Taylor was going to have to arrest him," at which point, according to Eveland, Chief Taylor arrested defendant.

Defendant denied that Chief Taylor told him that he was under arrest. Defendant testified that Taylor told him that if he did not leave he would be arrested for obstruction. Defendant admitted that he responded that Taylor was going to have to arrest him for obstruction. Defendant testified that at that time, Taylor did not tell him that he was under arrest. Taylor's response was to ask defendant to accompany him downstairs to the police department. The police officer with Chief Taylor corroborated defendant's testimony. The officer testified that "[a]t the point [defendant] said that you're going to have to arrest me, the Chief advised him we are going to go downstairs. He was escorted into the booking room." Defendant voluntarily accompanied Taylor downstairs to the police department.

Defendant played the video recording for the jury. For the majority of the time defendant was in the building, he stood silently or talking quietly in the public hallway or lobby area outside an office marked "Public Works / City Treasurer Office." The area in which defendant and his companions waited appears to be a public area of the building while the "Public Works / City Treasurer," and other office doors that can be seen in the recording, appear private, although those doors stood open while defendant was recording. Access to the private offices appears to be controlled by electronic key card or key fob. Chief Taylor blocked defendant from entering the

-6-

outer office from the hallway, while he waited for a response to the parties' requests for a copy of the budget.

When images of binders in Favorita's office appear on the recording, Chief Taylor can be heard saying to defendant, "I need you to come out." Defendant responds, "No, no, no, I'm an alderman I'm entitled to be here." Taylor then says "[you can] get arrested if you don't get out of here." Defendant refused and said "I'm not leaving. " Taylor said "you're gonna leave *** this office is closed." Defendant stated he was an alderman and had a right to be in the building. Taylor told defendant the office he was in was closed. Defendant said the office was not closed and he had a right to be in the building and Taylor responded "not right here." Defendant stated he was not leaving. Taylor explained that he was telling defendant "as police chief" that he could not remain because the office was locked and "these people aren't here." Defendant said the office was not locked and he had a right to be present because he was an alderman. Taylor said the office would be locked as soon as defendant left.

Defendant refused, continuing to express his right to be present as an alderman. Defendant said, "I am not leaving *** until I get my budget." Defendant said "I have as much right to be in here ***" and Taylor offered that defendant can wait in the public area that defendant was in before. In the recording, defendant can be seen to be behind the private door controlled by an electronic key. Taylor said "there's personal office desks in here and you're not going to be here." Defendant refused, claiming to be waiting for another city official. Taylor told defendant he faced arrest for obstruction. Defendant and Taylor continued to talk. Defendant explained his purpose for being there was to obtain the budget. Taylor said defendant could wait in the lobby but that he could not wait in a private office. Defendant denied he was in a private

office space. Taylor told defendant he would not debate whether he was in a private office and explained that, for example, there was a desk in the office that held private information.

Taylor told defendant he would not permit defendant to wait in that area alone and that Taylor would not wait with him. Taylor again offered that defendant could wait in the public area but that if he persisted he would be arrested for obstruction. Defendant said, "Well you're going to have to arrest me for obstruction." Taylor replied, "let's go downstairs," whereupon they left. Taylor and defendant can be seen exiting the central area behind the "Public Works / City Treasurer Office" door and going back into the public hallway or lobby, and walking downstairs.

The State filed an amended information charging defendant with resisting a peace officer. Defendant raises no question on the pleadings. During trial, defendant requested the trial court to instruct the jury that some use of force is required to find that a person has resisted an authorized act in violation of section 31-1. The court refused to give defendant's proffered jury instruction.

Following trial, the jury found defendant guilty and the trial court sentenced defendant to perform community service and imposed fines and costs. In defendant's posttrial motions, he argued that the standard pattern jury instructions regarding resisting a peace officer erroneously fail to state that a physical act is required for conviction. Defendant argued that the statute in question requires "a commissive [*sic*] act in order to sustain a conviction" and that no such act occurred, requiring that the trial court reverse his conviction. Defendant also sought posttrial relief on the grounds that his voluntary compliance with Chief Taylor's directive to accompany him to the police department requires acquittal. Defendant's posttrial motion also argued that at the time of his arrest, he was engaged in an act of protected free speech, Chief Taylor's directive was, therefore, not an authorized act, and the court must acquit him.

-8-

The court denied defendant's posttrial motions.  This appeal followed.

ANALYSIS

Defendant argues that mere argument with a peace officer is not prohibited under section 31-1 and that his failure to abide by Taylor's command is insufficient to support his conviction. The State responds that the court has held that "[p]assive acts that impede an officer's ability to perform his duties, such as repeatedly refusing an officer's order to exit a vehicle, may also violate section 31-1(a)." *People v. Ostrowski*, 394 Ill. App. 3d 82, 98 (2009).  See also *Raby*, 40 Ill. 2d at 402 (finding no reversible error in giving of instruction stating that " 'resisting a peace officer in the performance of his duty may be passive as well as active.  To interfere and obstruct does not require active resistance and force.' ").  The State argues that, in this case, the evidence proves that defendant persistently refused to respond to numerous authorized requests to leave the private office space.

The State argues that it is defendant's *repeated* refusal to leave after multiple authorized requests to leave which constitutes the act of obstruction because those "persistent, many refusals *** impeded, hindered *** or delayed the performance of officers' dut[y]" to secure the private office space when no employees were present.  The evidence proves defendant's persistence, and, therefore, the evidence is sufficient to prove that defendant violated section 31-1. See *Ostrowski*, 394 Ill. App. 3d at 98.  The State also argues that defendant's physically remaining in the private office space is a physical act and is equivalent to going limp.  Therefore, defendant obstructed a police officer under *Raby*'s interpretation of section 31-1(a).

We find that defendant did not resist an authorized act within the meaning of section 31-1. There is no dispute that the "authorized act" which the State alleged defendant resisted was

-9-

Taylor's effort to secure the private office space. The jury instructions state that "[t]he defendant has been charged with the offense of resisting a peace officer for the securing of a private office space." The encounter in which Taylor asked defendant to leave the private office space was brief. Taylor stated that defendant had to leave, and defendant responded he had a right to be present. Although both parties repeated themselves multiple times, the encounter lasted only a short time. Defendant told Taylor he had a right to be present and Taylor stated that he was not going to debate that question with defendant, and that defendant would be arrested if he did not leave. Defendant said he would have to be arrested.

This court has held that section 31-1 "does not prohibit a person from verbally resisting or arguing with a police officer about the validity of an arrest or other police action. [Citation.] Verbal resistance or argument alone, even the use of abusive language, is not a violation of the statute." *People v. McCoy*, 378 Ill. App. 3d 954, 962 (2008). See generally *City of Champaign v. Torres*, 214 Ill. 2d 234, 244 (2005) ("section 31-1 would not prohibit a person from using reasonable force to prevent the officer from making an unconstitutional entry into his or her apartment"). It is clear from the video recording of the encounter that defendant's refusal to leave, and his statement that he would have to be arrested, were based on his belief that he had a legal right to be present.

Defendant repeatedly noted his status as an alderman and pointed out to Taylor that the office in fact appeared to be open to the public. Defendant was not simply defying Taylor's authority without basis. Defendant was stating his own authority to be present and thereby disputing the validity of Taylor's request that he leave. Defendant's almost immediate acquiescence to Taylor's authority, once defendant learned that his protestations about the

validity of Taylor's request would be fruitless, adds further proof that defendant was not attempting to simply "hinder" or "delay" Taylor's performance of his duty. See *Raby*, 40 Ill. 2d at 399. Rather, defendant was merely disputing Taylor's authority under the circumstances.

We also note that the jury instructions given in this case erroneously failed to instruct the jury to determine whether defendant merely argued with Chief Taylor about his authority to order defendant out of the private office space. The trial court gave the jury Illinois Pattern Jury Instructions 22.13 and 22.14 (Illinois Pattern Jury Instructions, Criminal, Nos. 22.13, 22.14 (4th ed. 2000)) as modified in defendant's instructions 2 and 3, but refused to give defendant's instruction No. 1. Defendant's instruction No. 1 read as follows:

"Section 31-1 of the Criminal Code of 1961 provides that

'[a] person who knowingly resists the performance by one known

to the person to be a peace officer *** of any authorized act within

his official capacity commits a Class A misdemeanor.' The statute does not prohibit a person from police officer about the validity of an arrest or other police action. Verbal resistance or argument alone, even the use of abusive language, is not a violation of the statute. Rather, the statute prohibits a person from a committing a physical act of resistance or obstruction-a physical act that impedes, hinders, interrupts, prevents or delays the performance of the officer's duties, such as going limp, forcefully resisting arrest, or physically helping another party to avoid arrest.

Argument alone is not sufficient to support a conviction for

resisting a peace officer. There is nothing in the law to suggest that

a person may not at least initially question the validity of the

officer's actions, inquire as to the reason for the arrest or other

action, point out the officer's mistake, and protest and argue the

officer's actions."

The instructions the trial court gave to the jury read as follows:

"A person commits the offense of resisting a peace officer

when he knowingly resists the performance of any authorized act

within the official capacity of one known to him to be a peace

officer."

"To sustain the charge of resisting or obstructing a peace

officer, the State must prove the following propositions:

* * *

Third Proposition: That the defendant knowingly resisted

the performance by W. Daniel Taylor of an authorized act within

his official capacity."

The statute does not prohibit a person from verbally arguing with a police officer about the validity of an arrest or other police action. *McCoy*, 378 Ill. App. 3d at 962. The facts in this case supported defendant's argument that his only conduct was to argue about the validity of the police action. Thus, by refusing to address the thrust of defendant's argument by jury instruction, the trial court committed reversible error by removing a disputed issue essential to the determination of defendant's guilt or innocence from the jury's consideration. *People v. Hopp*, 209 Ill. 2d 1, 8 (2004). Accordingly, for that reason alone, defendant's conviction would have to be reversed and the cause remanded for a new trial.

We also find, however, that defendant's only conduct was argument coupled with eventual

cooperation. Where the defendant merely argues with the officer, as defendant did in this case, then, after a brief time, complies with the officer's requests, as defendant did in this case, the supreme court has expressly held that "no offense took place." *People v. Weathington*, 82 Ill. 2d 183, 187 (1980) ("where the defendant merely argued with the officer as to when he would answer the booking questions and then, after an indefinite but certainly a brief time, did answer the questions, no offense took place"). The evidence proves that defendant merely disputed Taylor's authority to ask defendant to leave the private city office space based on defendant's reasonable belief that he had a right to be present. The recitation of the event takes longer than the tape establishes the incident actually lasted. Defendant's act of verbally disputing Taylor's authority for a brief time does not constitute resisting a peace officer. No reasonable trier of fact, properly instructed, could find that defendant's acts constituted resisting under section 31-1. Accordingly, defendant's conviction is reversed.

## CONCLUSION

The judgment of the circuit court of Fulton County convicting defendant of resisting a peace officer is reversed.

Reversed.