# Illinois Official Reports

## Appellate Court

---

### *People v. Mehta*, 2020 IL App (3d) 180020

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEVAL K. MEHTA, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-18-0020 |
| Filed | July 10, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 16-CM-2370; the Hon. M. Thomas Carney, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and James Wozniak, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE LYTTON delivered the judgment of the court, with opinion.<br>Justices McDade and Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1 Defendant, Keval K. Mehta, appeals following his conviction for obstruction of a peace officer. He argues that the evidence presented by the State at his trial was insufficient to prove him guilty beyond a reasonable doubt of the charged offense. We affirm.

¶ 2 I. BACKGROUND

¶ 3 The State charged defendant via criminal complaint with one count of obstructing a peace officer (720 ILCS 5/31-1(a) (West 2016)). The complaint alleged that defendant

"knowingly obstructed the performance of Dave[1] Stepien, of an authorized act within his official capacity, being the investigation of a traffic stop, knowing Dave Stepien to be a peace officer engaged in the execution of his official duties, in that the defendant did not turn away from Officer Dave Stepien when told to do so."

Defendant elected to proceed with a bench trial.

¶ 4 At trial, Stepien testified that on August 2, 2016, at approximately 12:05 a.m., he and his sergeant were dispatched to a parking lot in the area of Beaconridge Drive in Bolingbrook on reports that a man with a handgun was threatening another person. Officer Jason Mitchem and other officers were already on the scene when Stepien arrived. As Stepien pulled into the parking lot, his car was passed by a black SUV. Mitchem pointed at the SUV and instructed Stepien to stop it. Stepien pulled his squad car behind the SUV, effecting what he described as a "felony traffic stop" because a firearm was reportedly involved.

¶ 5 Per Stepien's instructions, the driver of the SUV rolled down his window, threw out the keys to the car, exited the vehicle, raised his hands, turned his back to Stepien, and walked backwards toward the officer. The driver was placed in handcuffs.

¶ 6 Defendant was a passenger in the SUV. After the driver of the SUV had been secured, Stepien instructed defendant to exit the vehicle with his hands raised. He also instructed defendant to turn around once he was out of the car. Stepien testified that defendant "flung the door open very aggressively." Defendant did not put his hands in the air and did not turn around. Stepien testified that he commanded defendant "[m]ultiple times" to turn around. Defendant responded by telling the officers "I don't have to do s***." Stepien testified that defendant did eventually walk forward to the officers, though he never turned around. He was placed into custody without further incident. Stepien noted that he did not personally observe defendant being placed in handcuffs because he was keeping his attention on the vehicle.

¶ 7 Stepien testified that he was wearing a vest carrier, which looks like a police uniform shirt but carries a bulletproof vest. He was driving an unmarked squad car but activated its flashing lights to effectuate the stop. He identified himself to defendant as a police officer. Stepien also testified that the area of Beaconridge Drive to which he responded was known for high gang activity. Because of this fact and the report of a gun, Stepien took all standard precautions when executing the traffic stop.

¶ 8 On cross-examination, Stepien estimated that his entire interaction with defendant likely lasted less than five minutes. On redirect, Stepien testified that it did not last longer than three minutes.

---

[1]The report of proceedings indicates that the officer's name is actually Dane Stepien.

¶ 9 Mitchem testified that he responded to the vicinity of Beaconridge Drive on the night in question. Upon arrival, Mitchem met with the complainant, who told him that two men had been chasing him with a gun. As Mitchem was speaking with the complainant, a black SUV accelerated through the parking lot. The complainant indicated that the men with the gun were driving an SUV. Mitchem briefly gave chase on foot and then indicated to Stepien to stop the SUV. After Stepien had effectuated the stop, Mitchem ran to that area to assist.

¶ 10 Mitchem testified that the driver of the SUV was compliant with all of the officers' commands. He testified that defendant, however, was "[v]ery belligerent [and] would not follow directions." Specifically, he refused to turn away from the officers despite being commanded to do so. Defendant repeatedly stated that he was going to sue the police. Mitchem testified that he was eventually able to get close enough to defendant "to handcuff him without a struggle." He then turned defendant over to another officer "in order to finish clearing the car."

¶ 11 On cross-examination, Mitchem estimated that the interaction between Stepien and defendant did not last longer than three minutes. He could not say whether it was one minute or two minutes. He testified that it was not "the twenty seconds that we wanted it to take." On redirect, Mitchem described the stop as a "very high stress situation." He explained that defendant not turning away put himself (Mitchem) at risk. Mitchem noted that defendant's conduct "took away from our ability to investigate if there was anyone else in the car, if there was a gun in the area."

¶ 12 The court found defendant guilty and sentenced him to a term of 12 months' conditional discharge.

¶ 13                                    II. ANALYSIS

¶ 14 When a challenge is made to the sufficiency of the evidence at trial, we review to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Baskerville*, 2012 IL 111056, ¶ 31; *People v. Collins*, 106 Ill. 2d 237, 261 (1985). In making this determination, we review the evidence in the light most favorable to the prosecution. *Baskerville*, 2012 IL 111056, ¶ 31. All reasonable inferences from the record in favor of the prosecution will be allowed. *People v. Bush*, 214 Ill. 2d 318, 326 (2005). The trier of fact is not required to seek out or accept any "possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Campbell*, 146 Ill. 2d 363, 380 (1992).

¶ 15 Section 31-1(a) of the Criminal Code of 2012 (Code) holds that obstruction of a peace officer is committed where "[a] person who *** resists or obstructs the performance by one known to the person to be a peace officer *** of any authorized act within his or her official capacity." 720 ILCS 5/31-1(a) (West 2016). On appeal, defendant concedes that the State sufficiently proved that Stepien was a peace officer performing an authorized act within his official capacity and that defendant knew these facts. He argues that his conduct in not turning away from the officers did not amount to an actual obstruction to Stepien's traffic stop. Alternatively, defendant argues that the State failed to prove that defendant knew his actions would amount to an actual obstruction. We address each argument in turn.

¶ 16                                    A. Obstruction

¶ 17      In *Baskerville*, our supreme court stated that "[t]he legislative focus of section 31-1(a) is on the tendency of the conduct to interpose an obstacle that impedes or hinders the officer in the performance of his authorized duties." *Baskerville*, 2012 IL 111056, ¶ 23. Moreover, whether such an obstacle has been created is an inquiry reserved "for the trier of fact, based upon the facts and circumstances of each case." *Id.*

¶ 18      In his brief, defendant initially argues that his refusal to turn away from the officers "did not actually hamper or impede the officer's investigation of the traffic stop." Elsewhere, however, defendant concedes that "[a]t best, the State's evidence demonstrated that [defendant's] failure to turn around as instructed momentarily delayed the investigation." Further, defendant asserts on multiple occasions that his conduct caused only a "*de minimis* [*sic*] delay" to Stepien's investigation. We interpret these as two distinct arguments: first, that defendant interposed *no* impediment or hinderance to Stepien's traffic stop and, second, that any such hinderance or impediment was so minor and brief that it fails to satisfy the requirements of section 31-1(a).

¶ 19      The first of these arguments need be addressed only briefly. The facts adduced at trial in this case leave no doubt that defendant's refusal to turn away from the officers as instructed impeded or hindered the traffic stop and gun investigation in some tangible way. While Stepien and Mitchem testified that the entire encounter involving defendant lasted less than three minutes, their testimony and reasonable inferences drawn therefrom make clear that defendant's conduct caused some delay in the investigation beyond the 20 seconds Mitchem would have expected that portion of the investigation to take. Under a strict interpretation of section 31-1(a), as explained in *Baskerville*, this delay, if only momentarily, hindered the investigation. We must therefore consider whether a *de minimis* exception applies to that statute.

¶ 20                              1. *De Minimis* Exception

¶ 21      In *People v. Comage*, 241 Ill. 2d 139, 150 (2011), the defendant was charged with obstruction of justice (720 ILCS 5/31-4 (West 2006)) for throwing drug paraphernalia over a fence immediately prior to his arrest. The officers witnessed that act, walked around the fence, and were able to recover the items within 20 seconds. *Comage*, 241 Ill. 2d at 150. Our supreme court observed that in enacting the obstruction of justice statute, "the legislature intended to criminalize behavior that *actually* interferes with the administration of justice, *i.e.*, conduct that 'obstructs prosecution or defense of any person.' " (Emphasis in original.) *Id.* at 149. The court concluded that the defendant's actions did not satisfy the statute, despite the 20-second delay, because they did not "materially impede the officers' investigation." *Id.* at 150; see also *id.* at 151 (Freeman, J., specially concurring) (finding that "materiality is a necessary component of Illinois's obstructing justice statute"). A *de minimis* exception and an implicit component of materiality are two sides of the same coin. While an act might hinder or impede an official act in the technical sense, that hindrance or impediment may be so minimal as to not be considered a violation of the statute in question.

¶ 22      To be sure, the obstruction of justice statute at issue in *Comage* is distinct from section 31-1 obstruction of a peace officer in that it is a Class 4 felony and includes an enumerated list of ways in which the obstruction may be committed. 720 ILCS 5/31-4 (West 2006). *Baskerville* was decided the year after *Comage* and made no explicit reference to a materiality component

- 4 -

or a *de minimis* exception to the obstruction of a peace officer statute. Nevertheless, *Baskerville* strongly implies that the same materiality component should also be applied to the lesser obstruction offense.

¶ 23 First, the *Baskerville* court observed that sections 31-1 and 31-4 of the Code contemplate the same "obstructive conduct" but that section 31-4 merely targets an enumerated subset thereof. *Baskerville*, 2012 IL 111056, ¶ 28. Further, the *Baskerville* court derived its definition of "obstruct" directly from the dictionary, noting that rules of statutory construction compelled it to do so where the term was not defined in the statute. *Id.* ¶ 19. The term "obstruct" is also not defined in section 31-4 (720 ILCS 5/31-4 (West 2016)), such that the term would also need to be defined from the dictionary; in short, the definition of "obstruct" must be the same between the two statutes. Where the obstructive conduct contemplated by sections 31-1 and 31-4 is the same in nature, and the definition of the term itself is the same across the statutes, it follows that the materiality requirement recognized in *Comage* to obstruction of justice must also apply to obstruction of a peace officer.

¶ 24 That observation is also reflected in the result of *Baskerville*. In that case, a sheriff's deputy witnessed a woman driving whose license he believed to be suspended and began following her. *Baskerville*, 2012 IL 111056, ¶ 5. After arriving at her home and stepping out of her vehicle, the deputy asked her to return to her vehicle, but the woman walked into her house. *Id.* ¶ 6. The deputy went to the front door of the house, where he encountered the defendant, who was the woman's husband. *Id.* ¶ 7. The defendant told the deputy that his wife was not home and that it was he who had been driving. *Id.* The defendant offered to let the deputy in the home to search for his wife, but the deputy declined, indicating that he would simply send a ticket in the mail. *Id.*

¶ 25 The *Baskerville* court acknowledged that "[p]roviding misinformation to the police that interferes with and is relevant to the performance of his authorized duties may certainly frustrate law enforcement." *Id.* ¶ 24. Nevertheless, the court observed that the defendant's "false statement only has legal significance *** if the false information *actually* impeded an act the officer was authorized to perform." (Emphasis added.) *Id.* ¶ 35. The court concluded that "[a]t no point did [the] defendant's false statement that [his wife] was not home hinder [the deputy] in executing the traffic stop." *Id.*

¶ 26 The holding in *Baskerville* rests on the implicit recognition of a materiality component in the obstruction of a peace officer statute. Even if only by forcing the deputy to resort to mailing the ticket, the defendant's statements hindered the traffic stop in some negligible way. That impediment, however, could not amount to obstruction of a peace officer. We therefore hold that obstruction of a peace officer is committed only where a defendant's conduct creates an obstacle that materially "impedes or hinders the officer in the performance of his authorized duties." *Id.* ¶ 23. We also note that the State does not dispute the notion of a materiality requirement or a *de minimis* exception. It only argues that defendant's conduct in the present case did not qualify for such an exception. We turn to that question next.

¶ 27 2. Defendant's Conduct

¶ 28 In addition to *Baskerville*, defendant relies upon two other cases where otherwise obstructive conduct was found to not be a material impediment. In *People v. Taylor*, 2012 IL App (2d) 110222, an obstruction of justice case, the court considered a scenario in which the defendant gave a police officer a false name. The evidence in that case established that Donnell

Taylor was wanted on a misdemeanor warrant for failing to pay fines when a police officer noticed him crossing the street. The officer was "pretty sure" the defendant was Taylor but was not "100 percent" sure. (Internal quotation marks omitted.) *Id.* ¶ 4. The defendant twice provided a false name to the officer, which the officer ran through the computer system. *Id.* The defendant was only arrested when the officer said, "Hey Donnell" and the defendant looked at him and said "Yeah?" (Internal quotation marks omitted.) *Id.* The entire encounter prior to the arrest lasted no more than 10 minutes. *Id.*

¶ 29 The *Taylor* court found that "*Baskerville* confirms that the relevant issue in weighing a sufficiency-of-the-evidence challenge to a conviction for obstruction of justice is whether the defendant's conduct actually posed a material impediment to the administration of justice." *Id.* ¶ 17. Applying that standard, the *Taylor* court concluded that the defendant's initial giving of a false name did not materially impede the process of his arrest, noting that "[b]y all accounts, the entire encounter took no more than a few minutes." *Id.* The court pointed out that the officer's act of running the false name through the computer system "did not significantly delay the arrest." *Id.*

¶ 30 Defendant also relies on *People v. Berardi*, 407 Ill. App. 3d 575, 576 (2011), in which the defendant was charged with resisting a peace officer, a different formulation of the offense found in section 31-1. In that case, the defendant was arrested after repeatedly refusing a police officer's request that he leave a private office area within a public building, insisting that he had a right to be present. *Id.* at 580. This court found that the defendant's conduct did not violate the statute, observing that "[a]lthough both parties repeated themselves multiple times, the encounter lasted only a short time." *Id.* at 582. We also noted that " '[v]erbal resistance or argument alone, even the use of abusive language, is not a violation of the statute.' " *Id.* (quoting *People v. McCoy*, 378 Ill. App. 3d 954, 962 (2008)).

¶ 31 In *People v. Shenault*, 2014 IL App (2d) 130211, ¶ 22, the Second District rejected the notion that the length of any delay is the only relevant factor to consider when determining whether conduct created a material impediment. The court wrote: "Neither *Baskerville* nor *Taylor* categorically held that the degree of obstruction is measured only by the amount of time necessary for a peace officer to overcome the defendant's conduct." *Id.* The *Shenault* court found that the defendant's repeated refusal to alight from her car had created a threat to the arresting officer's safety. *Id.* In finding that the conduct did amount to obstruction of a peace officer, the court opined: "The considerations of officer safety that were at the heart of our decision in *Synnott* were not present in *Baskerville* and *Taylor*. Those considerations are paramount here." *Id.* In *Synnott*, the court had similarly found that obstruction of a peace officer had been committed where the defendant repeatedly failed to exit his vehicle during a driving under the influence stop. *People v. Synnott*, 349 Ill. App. 3d 223, 228 (2004). The *Synnott* court concluded: "It seems clear that any behavior that actually threatens an officer's safety or even places an officer in fear for his or her safety is a significant impediment to the officer's performance of his or her duties." *Id.*

¶ 32 We agree with the reasoning of the *Shenault* and *Synnott* courts. There can be no doubt that the length of any delay or the brevity of any impediment is a factor, if not the primary factor, in determining whether a given defendant has materially obstructed the actions of police. While *Baskerville*, *Taylor*, and *Berardi* gave crucial weight to that factor, none of those cases held or implied that it was the *only* factor. *Baskerville* and *Taylor* concerned investigations into driving on a suspended license and a misdemeanor warrant for failing to pay fines, respectively. In

*Berardi*, it was not clear that the defendant was committing *any* criminal offense. In all three cases, the arresting or investigating officer was familiar with the defendant.

¶ 33        In contrast, *Shenault* and *Synnott* both involved officers conducting traffic stops on unfamiliar subjects. Further, the defendants in both cases refused to exit their vehicles, heightening existing concerns for officer safety. Those cases reasonably stand for the proposition that obstructive acts that may not create a material impediment in one set of circumstances may nevertheless create such an impediment in other circumstances.

¶ 34        Aside from the length of the delay, one relevant factor in this determination is the nature of the obstructive act itself. For example, a suspect's refusal to make his hands visible or exit his vehicle create patent officer safety concerns, whereas the giving of a false name might not. The nature of the "authorized act" being obstructed is also relevant. 720 ILCS 5/31-1 (West 2016). For example, actions that do not amount to material obstruction in a misdemeanor stop may nevertheless be considered a material impediment in a more fraught situation, such as the hot pursuit of a violent suspect.

¶ 35        In this case, the delay caused by defendant's refusal to turn around was relatively small, with all parties in agreement that it was less than three minutes. But that refusal occurred in a high-tension situation for the police. The officers stopped defendant's vehicle, at night in an area known for gang activity, on suspicion that the occupants were in possession of a firearm. Defendant exacerbated the already elevated officer safety concerns by repeatedly ignoring orders given specifically for the protection of the officers. To echo the *Synnott* court, "[i]t seems clear that any behavior that actually threatens an officer's safety or even places an officer in fear for his or her safety is a significant impediment to the officer's performance of his or her duties." *Synnott*, 349 Ill. App. 3d at 228. We agree and find that a rational trier of fact in this case could find beyond a reasonable doubt that defendant's conduct created a material impediment to Stepien's investigation.

¶ 36                                              B. *Mens Rea*

¶ 37        Defendant also argues that, even if his conduct amounted to a material obstruction, the State failed to prove beyond a reasonable doubt that he acted knowingly, as required by section 31-1 of the Code. He points out that the State submitted no evidence that defendant was aware that he was in an area known for gang activity or that Stepien was investigating for the presence of a firearm. Defendant argues, in essence, that if these contextual factors may render his conduct obstructive under the statute, the *mens rea* may only be satisfied if he was aware of those facts at the time.

¶ 38        Obstruction of a peace officer under section 31-1 "requires that the obstruction must be knowingly done; meaning that the defendant must be consciously aware that his conduct is practically certain to cause the result." *Baskerville*, 2012 IL 111056, ¶ 23 n.1 (citing 720 ILCS 5/4-5(b) (West 2006)). "[S]ection 31-1(a) of the Code does not prohibit any particular act, only the result of obstructing." *People v. Kotlinski*, 2011 IL App (2d) 101251, ¶ 54.

¶ 39        In support of his argument, defendant relies solely on *Kotlinski*. In that case, the defendant exited the passenger side of his vehicle while an officer was administering field sobriety tests to his wife and then got back in upon being ordered to do so. *Id.* ¶¶ 13-14. The reviewing court found that the defendant had acted without the required mental state, finding that "standing next to the car, not advancing toward [the officer], not speaking, not gesturing, defendant

evinced no awareness that he was obstructing [the officer's] investigation, any more than watching from inside the vehicle had obstructed it." *Id.* ¶ 57.

¶ 40 The facts in *Kotlinski* are markedly different from those in the present case. It is well-settled that knowledge must often be proven through circumstantial evidence. *Id.* ¶ 55. In *Kotlinski*, the court found that there was no circumstantial evidence from which it could be inferred that the defendant knew he was obstructing the traffic stop merely by getting out of his vehicle. In contrast, defendant in the present case repeatedly refused to comply with the officers' commands, thus delaying the traffic stop and investigation. It is difficult to discern any other potential explanation for this conscious decision other than an intent to impede or hinder. A rational trier of fact could easily conclude that defendant was well aware that his repeated refusal to follow instructions would obstruct the traffic stop and investigation.

¶ 41 In reaching this conclusion, we necessarily reject defendant's implicit suggestion that the so-called *de minimis* exception in the obstruction of a peace officer statute should also be applied to the mental state requirement. The application of a materiality component or a *de minimis* exception reasonably shields from criminal liability persons whose conduct creates only a minor or negligible impediment for police officers. No such shield is warranted where a person consciously intends to create a minor or *de minimis* obstruction, as that person still acts with a guilty mind. To be sure, contextual factors not known to a defendant may not turn nonobstructive conduct into obstruction under the statute. But a person who acts with knowledge that his action creates *any* hinderance or obstacle has acted with the requisite *mens rea* under section 31-1 of the Code.

¶ 42 III. CONCLUSION

¶ 43 The judgment of the circuit court of Will County is affirmed.

¶ 44 Affirmed.