NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220173-U

NO. 4-22-0173

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 3, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| DERRICK JENKINS, | ) | No. 16CM1656 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Turner and Doherty concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The evidence was insufficient to support defendant's conviction for obstructing a
peace officer.

¶ 2     Defendant, Derrick Jenkins, appeals his conviction for obstructing a peace officer.

Defendant contends the evidence at trial was insufficient to prove him guilty beyond a

reasonable doubt. We agree and reverse defendant's conviction for obstructing a peace officer.

¶ 3                                I. BACKGROUND

¶ 4     In October 2016, defendant received a citation and complaint for driving under

the influence (DUI) (625 ILCS 5/11-501(a)(2) (West 2016)) in McLean County case No.

16-DT-702 and improper lane usage in McLean County case No. 16-TR-19088. The State

further charged defendant by information with obstructing a peace officer (720 ILCS 5/31-1(a)

(West 2016)) in the present case, McLean County case No. 16-CM-1656, alleging he knowingly

obstructed the performance of Bloomington police officer Brandt Parsley of an authorized act within his official capacity, being the custodial transportation of defendant, in that defendant physically refused to enter a police vehicle for his transportation after being directed to do so by Parsley, and he knew Parsley was a peace officer.

¶ 5 At defendant's March 2017 jury trial, Bloomington police officer Bryce Janssen testified he and Officer Parsley were on foot for an unrelated investigation at approximately 10:20 p.m. on October 10, 2016, when they "heard a loud crash." As they walked toward the crash scene, Janssen observed a Chevrolet Malibu that had struck a parked blue van. Defendant was standing near the vehicles. Defendant declined an ambulance and told Janssen he was the driver and only occupant of the vehicle. Parsley arrested defendant for DUI and transported him to the police department for processing.

¶ 6 Janssen explained defendant was acting "belligerent almost" during processing. Janssen stayed in the processing room with Parsley based on defendant's actions. After defendant was processed, the officers attempted to place defendant in Parsley's car for transport to the county jail. Parsley's car did not have a divider to separate the rear passenger area from the front of the vehicle, so the officers attempted to place defendant in the front seat. Janssen described defendant's refusal:

> "Officer Parsley asked him to get in the car and he said he wasn't getting in the car. And at one point in time, he even leaned his body outside of the vehicle. I'm not 100 percent positive, I believe he had his foot in the vehicle and he refused to get his other foot in the vehicle. And based off of his unwillingness to get in the vehicle, I told Officer Parsley we should put him in my vehicle."

Janssen's car did have a partition separating the rear passenger area.

¶ 7          Parsley testified he conducted field sobriety tests. During the tests, Parsley noted defendant was "just unable to follow instructions" and refused to complete some tests. Parsley arrested defendant and transported defendant to the police department in his squad car. During the DUI processing, defendant was erratic. Parsley stated defendant "would go from being very nice and cordial to just absolutely irate." Due to defendant's "hostile behavior," Janssen stayed with Parsley during DUI processing. Parsley described the attempt to place defendant in his car:

> "We attempted to place him in the car. He refused. At that time we decided that we would place him in Officer Janssen's car which was directly behind mine. The reason for that is that it had a Plexiglass divider where we put [defendant] away from—away from me, basically.
>
> ***
>
> He just leaned up against [the vehicle] like (indicating). I don't really know how to explain it. But he would put his back against the top portion of the car. Making it to where we couldn't push him into the car and have him sit down."

¶ 8          The State played a video of defendant refusing to get in Parsley's vehicle for the jury. Parsley testified the video was from Janssen's squad car and caught the "initial attempt" to put defendant in his car. The video begins with defendant partially in the front passenger side of the car with an officer behind him. Within a few seconds, the officers removed defendant and took him to Janssen's car.

¶ 9          Defendant testified in his own defense. Defendant claimed Ladika Tolise was driving the vehicle when a strut broke on the car. Defendant was on the phone with roadside assistance and Tolise "walked off" because "[h]e was in a bit of a rush." Officers arrived and had

defendant perform field sobriety tests. Defendant informed one of the officers he needed to use the restroom and believed it affected his ability to perform the tests. Defendant also claimed to be taking prescription pain medication at the time. Defendant stated he was giving random answers to the officers' questions because he did not want to talk to the officers at all.

¶ 10            The jury found defendant guilty of DUI in case No. 16-DT-702, improper lane usage in case No. 16-TR-19088, and obstruction of a peace officer in case No. 16-CM-1656. The trial court sentenced defendant to 150 days in jail for obstruction and DUI.

¶ 11            Defendant appealed his convictions for DUI and obstruction in consolidated appeals. (We note defendant did not appeal his conviction for improper lane usage in case No. 16-TR-19088.) After a series of remands related to *Krankel* hearings (*People v. Krankel*, 102 Ill. 2d 181 (1984)), the trial court held a final *Krankel* hearing on February 28, 2022. See *People v. Jenkins*, 2019 IL App (4th) 170319-U; *People v. Jenkins*, 2020 IL App (4th) 190878-U; *People v. Jenkins*, No. 4-21-0134 (Ill. Mar. 17, 2022) (appeal dismissed) (dismissed for lack of jurisdiction on defendant's motion).

¶ 12            On March 4, 2022, defendant filed a timely separate notice of appeal in case No. 16-DT-702 (docketed as No. 4-22-0187) and case No. 16-CM-1656, the present case. This court granted the Office of the State Appellate Defender's motion to withdraw as counsel on appeal and affirmed defendant's conviction for DUI. See *People v. Jenkins*, No. 4-22-0187 (Dec. 6, 2022) (unpublished summary order under Illinois Supreme Court Rule 23(c)). This appeal pertains only to case No. 16-CM-1656, defendant's conviction for obstruction of a peace officer.

¶ 13                                    II. ANALYSIS

¶ 14            A reviewing court will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People*

*v. Collins*, 106 Ill. 2d 237, 261 (1985). On a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 15        The trier of fact has the responsibility to assess the credibility of witnesses, weigh their testimony, and draw reasonable inferences from the evidence. *People v. Heard*, 187 Ill. 2d 36, 84 (1999). A reviewing court will not reverse a conviction simply because the evidence is contradictory. *People v. Berland*, 74 Ill. 2d 286, 306 (1978). We will not substitute our judgment for that of the trier of fact. *People v. Cooper*, 194 Ill. 2d 419, 431 (2000); *People v. Kotlarz*, 193 Ill. 2d 272, 298 (2000).

¶ 16        Section 31-1(a) of the Criminal Code of 2012 provides, "[a] person who knowingly resists or obstructs the performance by one known to the person to be a peace officer *** of any authorized act within his or her official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a) (West 2016). Defendant does not dispute he knew Officer Parsley was a peace officer performing an authorized act within his official capacity.

¶ 17        Defendant argues the State "failed to present any evidence that [defendant's] conduct materially obstructed Officer Parsley for more than a *de minimis* period of time." Defendant argues his case is analogous to *People v. Gotschall*, 2022 IL App (4th) 210256.

¶ 18        In *Gotschall*, the defendant was arrested and placed in the back seat of an officer's squad car. *Id.* ¶ 5. The defendant's foot was still on the pavement, so the officer was unable to close the door. The officer repeatedly asked the defendant to place his foot in the car, and the defendant did not comply. *Id.* The officer attempted to physically put the defendant's

foot in the car, and the defendant resisted by pushing his foot back down to the pavement. The officer threatened to spray the defendant with pepper spray, and the defendant complied. *Id.* Thirty seconds elapsed from the time the officer first told the defendant to get in the car and the point when the officer shut the car door. *Id.* ¶ 6. The defendant was charged with obstruction of a peace officer. *Id.* ¶ 3.

¶ 19　　　　This court held "the offense of obstructing a peace officer *** includes a material impediment requirement." *Id.* ¶ 26. In reversing the defendant's conviction, we found the "defendant's brief refusal to place his foot inside the squad car did not materially impede [the officer] from performing the authorized act of transporting defendant to the county jail." *Id.* ¶ 29. The defendant's refusal lasted less than 30 seconds and did not "threaten [the officer's] safety nor did it delay his transport by any appreciable period of time." *Id.* We noted, however, "a defendant's conduct may be found to materially impede an authorized act of a peace officer, even if it causes only a brief delay, if it threatens officer safety." *Id.* ¶ 30.

¶ 20　　　　Defendant argues this case is substantially similar to *Gotschall*. Defendant's refusal to get into Parsley's squad car was brief. The recording of the incident lasted only four seconds, and Parsley testified it showed the "initial attempt" to place defendant in his car. Even the most generous definition of "initial attempt" would still mean a very brief period elapsed before the officers decided to place defendant in Janssen's squad car. Defendant's refusal to sit in Parsley's car, therefore, did not delay his transport by any appreciable time period.

¶ 21　　　　The State concedes there are factual similarities between this case and *Gotschall*, including that the length of defendant's refusal was brief, but argues this case is distinguishable because defendant's conduct placed officers in fear for their safety. The State compares

defendant's case to *People v. Mehta*, 2020 IL App (3d) 180020, and *People v. Synnott*, 349 Ill. App. 3d 223 (2004).

¶ 22        In *Mehta*, the defendant was convicted of obstructing a peace officer. *Mehta*, 2020 IL App (3d) 180020, ¶ 3. Officers pulled over a vehicle in which the defendant was a passenger after receiving a report that two men had been chasing a victim with a gun. *Id.* ¶¶ 4, 9. The defendant exited the vehicle, and officers ordered him to turn around multiple times. *Id.* ¶ 6. The defendant did not turn around, but he eventually walked towards the officers, who took him into custody. *Id.* The incident lasted three minutes or less. *Id.* ¶¶ 8, 11. Officers described the stop as a " 'very high stress situation,' " and the defendant's refusal to turn around put officers at risk and impeded the officers' ability to investigate any other occupants of the vehicle or whether there was a gun in the vicinity. *Id.* ¶ 11. The appellate court ultimately affirmed the defendant's conviction, finding, although the defendant's conduct caused only a brief delay in the traffic stop, the nature of the obstructive act and the nature of the act being obstructed were relevant considerations. *Id.* ¶¶ 32-35. The court noted the conduct occurred in a "high-tension situation," as officers stopped the defendant's vehicle on suspicion the occupants possessed a firearm in an area known for gang-related violence. *Id.* ¶ 35. The court found, " '[A]ny behavior that actually threatens an officer's safety or even places an officer in fear for his or her safety is a significant impediment to the officer's performance of his or her duties.' " *Id.* (quoting *Synnott*, 349 Ill. App. 3d at 228).

¶ 23        In *Synnott*, an officer stopped the defendant's vehicle for speeding 20 miles per hour over the posted speed limit. *Synnott*, 349 Ill. App. 3d at 224. After observing signs the defendant was intoxicated, the officer asked the defendant to turn off the engine and step out of the car. *Id.* The trial court explained the situation as follows:

" '[T]he officer four times told the defendant to exit the vehicle, the defendant repeatedly refused to do so. He grasped the steering wheel firmly at one point in an obvious indication he was refusing to leave the vehicle and after four occasions did not remove himself, and then momentarily did not comply with the officer pulling his arm; although he then immediately did comply.' " *Id.* at 224-25. The defendant was found guilty of obstructing a peace officer. In affirming the defendant's conviction, the appellate court found, "It seems clear that any behavior that actually threatens an officer's safety or even places an officer in fear for his or her safety is a significant impediment to the officer's performance of his or her duties." *Id.* at 228.

¶ 24        We fail to see how defendant's actions in this case placed the officers' safety at risk. *Mehta* and *Synnott* involve officers conducting traffic stops on unfamiliar subjects. In both cases, the defendants refused to comply with direct orders from officers, heightening existing concerns for officer safety. In this case, defendant was already in custody in a police parking garage. Defendant had been in custody for over an hour by this point, and he had already safely been transported in Parsley's squad car. Even after defendant's "erratic" behavior in the DUI processing room, Parsley was still willing to transport defendant in his squad car prior to defendant's refusal. That the officers decided it would be *safer* to transport defendant in Janssen's vehicle after defendant's refusal does not demonstrate the officers felt *actually threatened* by defendant's actions or feared for their safety.

¶ 25        We conclude, even considering the evidence in the light most favorable to the State, defendant's brief refusal to get into Parsley's squad car did not materially impede the officers from transporting defendant to the county jail. The partial recording of the incident reflects defendant only briefly refused to sit in Parsley's car before officers decided to place him

in Officer Janssen's squad car. Defendant's brief refusal to sit in Parsley's car while handcuffed in a police parking garage did not threaten the safety of the officers.

¶ 26 Because we find the trial evidence was insufficient to prove defendant guilty beyond a reasonable doubt of obstructing a peace officer, we reverse defendant's conviction.

¶ 27                                    III. CONCLUSION

¶ 28 For the reasons stated, we reverse the trial court's judgment.

¶ 29 Reversed.