**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250005-U

Order filed January 28, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-25-0005 Circuit No. 24-CM-693 |
| LUIS J. GONZALEZ, | ) ) ) | Honorable Sherri Hale, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justices Holdridge and Bertani concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: The evidence was sufficient to prove defendant guilty beyond a reasonable doubt of obstructing a peace officer.

¶ 2    Defendant, Luis J. Gonzalez, appeals his conviction for obstructing a peace officer. He argues that the State failed to prove him guilty beyond a reasonable doubt because he did not materially impede the officer's investigation. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          The State charged defendant with battery (720 ILCS 5/12-3(a)(2) (West 2024)) and

obstructing a peace officer (*id.* § 31-1(a)(2)), alleging that defendant obstructed the performance

of Connor Emmett in his "investigation of domestic violence *** in that said defendant refused

to obey lawful commands." The matter proceeded to a bench trial. Officer Emmett testified that

he responded to a domestic disturbance call. When investigating this type of a call, "the best way

to do it is to get everything under control and make sure everyone is safe before, like, really

proceeding with the rest of it." Emmett testified that domestic disturbance cases are unique

scenarios with a very high potential for violence. When investigating domestic disturbance calls

in a home, the police cannot just let people walk away from them, because they could commit

further crimes, retrieve a weapon, or do any number of things. Domestic disturbance calls are

usually highly emotional situations. A person who is intoxicated during a domestic disturbance

call makes the situation more dangerous, because intoxicated individuals have impaired decision-

making ability.

¶ 5          Emmett testified that while he was en route to respond to the call, dispatch provided him

with an update that defendant was attempting to hit the victim with a beer bottle. Because of this

information, Emmett did not wait for backup when he arrived. Emmett had also been advised

that defendant had been argumentative with police in the past. When he arrived at the front door,

he was greeted by a male who directed him to defendant. The male advised Emmett that the

victim was upstairs. Emmett testified that he began speaking with defendant and asked what

happened. Defendant was on the staircase and did not want to talk to him. Defendant was upset,

seemed intoxicated and "his body language was kind of flighty." Emmett testified that defendant

seemed nervous and did not want him in the house. Emmett tried to calm him down and assure

2

him that he was there to investigate something. Defendant would not engage in productive conversation with him. When asked if he gave defendant directions to come off the stairs, Emmett responded affirmatively and stated that he asked defendant to come and talk to him. Defendant refused. Emmett testified that defendant "refused to do what I asked him to do and step off the staircase, he turned around and started to walking [*sic*] up the staircase." Emmett followed defendant because he did not know if there was a battery victim, and defendant was "walking towards where people that were involved in the situation were and I didn't want him to walk towards those people out of my sight." Additionally, Emmett did not know if defendant had a weapon upstairs.

¶ 6 Emmett testified that defendant stopped on the upper landing of the staircase, and Emmett told him to let him pass. Defendant turned towards Emmett and started moving towards him. Defendant was upset and aggressive. The way defendant stepped towards Emmett made him feel like defendant was going to batter him and shove him down the stairs. Emmett testified that at that point he started yelling commands for defendant to back up. Defendant stepped back a little. Emmett ordered defendant to let him pass because he felt like his "safety was extremely compromised with [defendant] above me on the stairs like that." Emmett put his hand on defendant's chest as he stepped past him. Emmett testified that he did so because defendant was aggressive and he thought defendant was going to push him down the stairs. Emmett wanted to get up the stairs to get control of the situation, investigate to see if there were injured parties, and conduct interviews.

¶ 7 Emmett testified that after he passed defendant on the stairs, he ordered defendant to come up the stairs with him. Defendant complied. At the top of the stairs, defendant stepped extremely close to Emmett while still being aggressive and angry. Emmett testified that

3

defendant's body language was aggressive, like he wanted to fight. Defendant was within six inches of Emmett, face to face. Emmett testified that he felt like his safety was compromised because of how close defendant was to him, and the railing over the second story was nearby. Emmett placed his hand on defendant's chest to move him back and told him not to get so close. Defendant smacked Emmett's hand off of his chest. Emmett then arrested defendant for battery, as he made physical contact with him in a provoking and aggressive way. When Emmett told defendant he was under arrest and grabbed his arm, defendant began pulling away. After defendant was arrested, Emmett was able to complete the investigation into the domestic disturbance.

¶ 8    Video from Emmett's body camera was introduced into evidence. The video showed that Emmett had been informed that defendant was intoxicated and had previously been argumentative with the police. Once inside the home, Emmett inquired as to what had taken place and asked defendant his name. Defendant refused to provide his name. Defendant turned away from Emmett and began walking up the stairs while Emmett was trying to speak with him. Emmett told him to "come here" multiple times and followed him up the stairs. Defendant stopped on the stairs, turned around to Emmett, and aggressively asked why Emmett was coming up to him. Emmett told defendant to move out of his way. Defendant moved closer to Emmett, and Emmett told him multiple times to back up and move. Emmett put his hand on defendant's chest and moved past him up the steps. Emmett went to the top of the steps and told defendant they were going to talk right there. Defendant went to the top of the steps and stood very close to Emmett. Emmett told him to back up. Emmett put his hand on defendant's chest, and defendant smacked Emmett's hand away. Emmett then told defendant he was under arrest. Approximately

4

90 seconds passed between the time that Emmett arrived at the front door and Emmett told defendant he was under arrest.

¶ 9        The State rested. Defendant moved for a directed verdict and argued that there was no impairment of the police officer's investigation to support the obstruction charge. The State argued that defendant did not cooperate with the investigation and put the officer's safety at risk by walking away and getting closer to the alleged victims. Defense counsel responded that defendant obeyed every command that was given to him. The court questioned this argument, and the video was played again. Defense counsel then argued that defendant's conduct did not impede the investigation. The court asked, "Even when he threw his hands up and turned to go up the stairs after the officer was trying to talk to him?" Defense counsel argued that the officer did not give clear commands and that defendant had the right to refuse to speak with the officer. The court denied the motion for directed verdict.

¶ 10        Defendant did not present any evidence. The court found defendant not guilty of battery because it was unclear whether the contact with the officer was intentional or because defendant was off balance. The court found the officer to be credible in his testimony. The court found that Emmett testified credibly, that he felt he was battered, and that was why he arrested defendant. The court found defendant guilty of obstructing a peace officer. The court found that defendant obeyed some commands, but stated, "Once the officer is called into your home, the officer then is in charge of that situation and your only duty is to get out of the way and let the officer do his job. You don't get to throw your hands up. You don't get to walk away. You don't go to another room. Once the officer gets there, the officer controls the situation." The court noted that this was a different situation than when an officer approaches someone on the street. The court stated that defendant did not cooperate.

5

¶ 11    Defendant filed a motion for new trial or "reversal of the verdict." Defendant argued that he did not materially impede the officer's investigation. Essentially, defendant argued that his conduct was nothing more than token acts of resistance. The court denied the motion. Defendant was sentenced to 12 months' conditional discharge. Defendant filed a motion to reconsider sentence, which was denied. Defendant appeals.

¶ 12                                    II. ANALYSIS

¶ 13    Defendant argues that the State presented insufficient evidence to convict him of obstructing a peace officer, such that his conviction should be reversed because his conduct did not materially impede Emmett's investigation. Defendant does not argue that the State failed to prove any other element of the offense of obstructing a peace officer.

¶ 14    In assessing defendant's challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). A person commits the offense of obstructing a peace officer if he or she knowingly "obstructs the performance by one known to the person to be a peace officer *** of any authorized act within his or her official capacity." 720 ILCS 5/31-1(a)(2) (West 2024). "[O]bstruction of a peace officer is committed only where a defendant's conduct creates an obstacle that materially 'impedes or hinders the officer in the performance of his authorized duties.' " *People v. Mehta*, 2020 IL App (3d) 180020, ¶ 26 (quoting *People v. Baskerville*, 2012 IL 111056, ¶ 23). Several factors to consider when determining whether the defendant's conduct created a material hinderance include: (1) the length of the delay caused by the conduct, which is the primary factor; (2) whether the responding officer is familiar with the defendant; and (3) whether the conduct tends to pose a risk to officer safety." *People v. Coates*,

2025 IL App (4th) 231312, ¶ 30. "[A]ny behavior that actually threatens an officer's safety or even places an officer in fear for his or her safety is a significant impediment to the officer's performance of his or her duties." *People v. Synnott*, 349 Ill. App. 3d 223, 228 (2004). "[O]bstructive acts that may not create a material impediment in one set of circumstances may nevertheless create such an impediment in other circumstances." *Mehta*, 2020 IL App (3d) 180020, ¶ 33.

¶ 15 Here, there is no doubt that defendant's conduct hindered Emmett's ability to investigate an alleged battery for which he was called to the scene. The only question is whether such conduct was a material hinderance. Defendant refused to provide his name and walked away from Emmett, despite Emmett telling him to "come here." While defendant may have had a right to refuse to speak with Emmett, as defendant argues, he did not have a right to walk away from Emmett towards the potential victim, while ignoring Emmett's commands to "come here," as Emmett was attempting to investigate the matter. Additionally, defendant was aggressive and argumentative. Although defendant eventually obeyed some commands, Emmett generally had to repeat his commands multiple times prior to defendant complying. The delay caused by defendant's conduct was short. However, Emmett testified that he felt his safety was compromised by defendant's conduct, and he feared for his safety while on the stairs due to defendant's behavior. Additionally, the facts that this was a domestic disturbance call and Emmett could not wait for backup, defendant was intoxicated, defendant was argumentative and aggressive, and defendant was in a position above Emmett on the stairs as a result of his refusal to obey Emmett's commands would all support Emmett's belief that his safety was compromised.

¶ 16　　In assessing the factors outlined in *Coates*, 2025 IL App (4th) 231312, ¶ 30, we note that although the delay caused by defendant's conduct was relatively short, Emmett was not familiar with defendant and the only information he had regarding defendant was that he was the suspect in a domestic violence incident, was attempting to hit the victim with a beer bottle, was intoxicated, and was argumentative with police in the past. Emmett was not able to wait for backup due to the nature of the domestic incident he was called to investigate. Further, defendant's conduct posed a risk to Emmett's safety. In fact, considerations of officer safety "are paramount here," as they were in other cases where our courts have found a material impediment. See *Mehta*, 2020 IL App (3d) 180020, ¶ 31. Thus, two of the factors weigh heavily in favor of finding that defendant's conduct created a material hinderance. It is possible that in other circumstances defendant's refusal to obey an officer's commands to "come here," and instead continue to walk away, or his refusal to step to a particular location, would not have created a material hinderance. However, the circumstances involved in this matter, specifically the nature of the situation, the location of the victim, and the risk to Emmett's safety caused by defendant's conduct, support the court's finding of a material hinderance. See *Id.* ¶ 33.

¶ 17　　In sum, defendant (1) refused to answer Emmett when asked his name, (2) refused to step down off the stairs when told, (3) walked up the stairs toward the location of the alleged victim in defiance of Emmett's commands, (4) acted aggressively, making it difficult for Emmett to step around him, and (5) refused to move to where Emmett told him to move at the top of the stairs. This conduct was sufficient to support the court's finding that defendant materially impeded Emmett's investigation of a potentially violent crime beyond a reasonable doubt. See *e.g. Mehta*, 2020 IL App (3d) 180020, ¶ 35 (determining there was sufficient evidence of a material impediment, even though the delay caused by defendant was relatively small, but his conduct

"exacerbated the already elevated officer safety concerns"). Thus, the State presented sufficient evidence to prove defendant guilty beyond a reasonable doubt.

¶ 18                                III. CONCLUSION

¶ 19        The judgment of the circuit court of Will County is affirmed.

¶ 20        Affirmed.