# Illinois Official Reports

## Appellate Court

---

### *People v. Hall*, 2021 IL App (1st) 190959

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DEMITRI HALL, Defendant-Appellant. |
| District & No. | First District, Second Division<br>No. 1-19-0959 |
| Filed | August 10, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-MC2-002270; the Hon. Marcia Orr, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | James E. Chadd, Catherine K. Hart, and Ross E. Allen, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Paul E. Wojcicki, and Luke M. Arrington, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE COBBS delivered the judgment of the court, with opinion.<br>Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment and opinion. |

¶ 1 Following a bench trial, defendant-appellant, Demitri Hall, was found guilty of obstructing a peace officer (720 ILCS 5/31-1 (West 2016)). On April 2, 2019, the trial court sentenced defendant to two days in jail and six months conditional discharge. On appeal defendant argues that the State failed to prove him guilty beyond a reasonable doubt and, in the alternative, that there was a fatal variance between the complaint and the evidence at trial. For the following reasons, we reverse.

¶ 2 I. BACKGROUND

¶ 3 On November 14, 2017, the State charged defendant by misdemeanor complaint with obstructing a peace officer on October 21, 2017. The complaint alleged that defendant knowingly obstructed Detective Gibson's investigation by refusing "to obey lawful commands to produce identification and/or identify him[self] while Detective Gibson" investigated a crime involving the defendant in violation of section 31-1 of the Criminal Code of 2012 (Code) (720 ILCS 5/31-1 (West 2016)).

¶ 4 Prior to the commencement of defendant's bench trial, the State sought leave to add a second count to the complaint. Upon defense counsel's objection, the State's request was denied. The following evidence was adduced at trial.

¶ 5 Gibson testified that around 10 p.m. on October 21, 2017, he received a dispatch describing a domestic disturbance and possible kidnapping. The call directed him to Bronx Avenue and Dempster Street in Skokie. The suspect was described as a black or Hispanic man, wearing a black hooded sweatshirt and driving a black Jeep, with a white female passenger. Once in the area, he saw a Jeep with two occupants matching the dispatch description. Gibson followed the Jeep, and then while at a distance of approximately five blocks behind the Jeep, he activated his lights, but the Jeep continued driving. Approximately 30 seconds later, the Jeep pulled into a gas station, stopped in front of a gas pump, and a man later identified as defendant exited the Jeep and headed inside the station toward a station attendant.

¶ 6 Gibson, who was in full uniform, yelled to defendant to stop and announced that he needed to talk to him. Defendant continued inside the gas station, and Gibson followed. While inside, defendant told Gibson: "You've got the wrong guy. I don't know why you pulled me over." Gibson asked defendant for identification. Defendant responded that "he wasn't going to give [Gibson] anything." As both men left the gas station, four other uniformed officers arrived, including Officer Zurawski,[1] and they were "checking on the well-being of the female passenger."

¶ 7 Zurawski stood at defendant's car speaking to the female passenger. Defendant walked quickly towards Zurawski while Gibson yelled that he needed to talk to defendant. Defendant ignored Gibson and was "swearing and telling us to get the f*** away from [his] car." Zurawski told defendant to get back and eventually pushed defendant five to six feet. When defendant attempted to approach Zurawski again, another officer detained defendant.

¶ 8 On cross-examination, Gibson testified that shortly after police had detained defendant, Gibson learned that defendant was not the suspect because the female passenger said that she

---

[1]Officer Zurawski's first name does not appear in the record.

was fine and did not know why the police were there. Before releasing him, Gibson again asked defendant to identify himself, but defendant refused. Gibson acknowledged that the officers knew defendant's name that evening. A month following the incident, defendant was arrested.

¶ 9    During testimony on redirect and recross, Gibson was asked whether he told defendant that he was investigating an offense. He responded that while walking toward the gas station, he told defendant that he was investigating a kidnapping. Gibson further testified that that detail does not appear in his police report.

¶ 10    Zurawski testified that he received a dispatch similar to the one received by Gibson. Zurawski arrived at the gas station and saw Gibson and another officer follow defendant inside. Zurawski followed them inside but saw defendant speaking to Gibson and another officer. They appeared "not to need any assistance," so he returned to defendant's vehicle and spoke with the female passenger. While attempting to speak with her, defendant stepped out of the gas station and yelled at Zurawski to get away from the vehicle. Defendant walked quickly to the Jeep. After twice ordering defendant to step back, Zurawski "had to grab him by his sweater and push him back so [he] had distance" to speak to the female passenger. Defendant stepped forward again, and Zurawski again ordered him back and grabbed him by his sweater. Zurawski then spoke to the female passenger. The passenger had no injuries and did not appear to be in any distress. She told Zurawski that nothing was wrong.

¶ 11    Prior to resting, the State sought leave of court to amend the complaint and to "chang[e] the officer from Detective Gibson to Officer Zurawski." The court sustained defendant's objection. In denying the State's motion to amend, the court stated that "[w]hat this is really all about is the interaction between Mr. Hall and Detective Gibson. Because there's no charge here, although the State tried to file it, with regard to Officer Zurawski."

¶ 12    Following a recess, defendant moved for a directed verdict. The court stated that the question before it was whether defendant obstructed Gibson because "the State had not charged defendant with obstructing Zurawski." In denying the motion for directed verdict, the court stated that "[w]hat Mr. Hall did in the store, combined with his failure to obey the command of Gibson to stop approaching the car where Zurawski was trying to talk to this woman in and of itself would be obstruction." The court again noted that the complaint listed only Gibson and explained "Gibson is instructing Mr. Hall what to do. Mr. Hall is disobeying. And by disobeying these things, he's hindering the investigation that Gibson with his fellow officers is trying to do."

¶ 13    The defense rested without presenting any evidence. The court then announced its ruling, stating "based on everything I heard, there will be a finding of guilty."

¶ 14    Defendant filed a motion for new trial. In denying the motion, the court explained that "the gravamen of my finding had nothing to do with what happened in the gas station. It had to do with what happened at the vehicle, and the issue here was whether or not Mr. Hall hindered the investigation or got in the way of the investigation." The court continued:

> "The police were trying to talk to this woman to see what was going on, and Mr. Hall didn't just say something to them. He actually physically got up to the car, had to be pushed away, and then came back up again after he was told to stay away the first time and had to be pushed away again; and that's when the officers took him into custody."

¶ 15   On April 2, 2019, the court sentenced defendant to two days in jail, time considered served, and six months of conditional discharge. On May 2, 2019, defendant filed his notice of appeal.

¶ 16                               II. ANALYSIS

¶ 17   Defendant asserts that the State failed to prove him guilty of resisting or obstructing a peace officer beyond a reasonable doubt. In the alternative, he argues that should this court find the evidence was sufficient to prove obstruction of Zurawski, as opposed or in addition to Gibson, and that there was a fatal variance between the complaint and the evidence at trial, requiring reversal. The State responds that the evidence proved beyond a reasonable doubt that defendant committed the offense of obstruction of a police officer when he failed to comply with both Gibson's and Zurawski's orders but concedes that reversal is required as there was a variance between the complaint and the evidence presented at trial where the complaint only referred to Gibson.

¶ 18   As we are not bound by the State's confession of error (see *People v. Kelly*, 66 Ill. App. 2d 204, 209 (1965)), we will proceed to review the variance issue independently of its concession. Further, as the fatal variance issue is potentially dispositive of this appeal, we address it first.

¶ 19                             A. Fatal Variance

¶ 20   As an alternative to his challenge to the sufficiency of the evidence with respect to Gibson, defendant argues that should this court find him guilty of obstruction as to Zurawski, reversal is nonetheless required because there was a fatal variance between the complaint and evidence at trial that misled him in the preparation of his defense. The State, in conceding the issue, asserts that the variance resulted in defendant being convicted of obstructing Zurawski rather than Gibson. As support, the State asserts, based on the facts in the complaint, naming only Gibson, its attempt to amend the complaint, and the court's reasoning in finding defendant guilty, "it appears that defendant was convicted of a crime for which he was not charged, and may have been misled in making his defense."

¶ 21   A defendant has a fundamental right, under both the United States Constitution (U.S. Const., amend. VI) and the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 8), to be informed of the nature and cause of criminal accusations made against him so that he can prepare his defense and, equally important, so that the charged offense may serve as a bar to subsequent prosecutions arising out of the same conduct. *People v. Meyers*, 158 Ill. 2d 46, 51 (1994). Further, an individual may not be convicted except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 2.

¶ 22   Due process requires that a charging instrument must apprise a defendant of the precise offense with which he is charged. *People v. Ligon*, 365 Ill. App. 3d 109, 117 (2006). A fatal variance between the charging instrument and the proof pursuant to which a defendant is convicted at trial requires reversal of the conviction. *Id.* Formal defects in the charging instrument may be amended at any time on the motion of the State or the defendant, as long as there is not resulting surprise or prejudice to the defendant. 725 ILCS 5/111-5 (West 2016); *People v. Ross*, 395 Ill. App. 3d 660, 667 (2009). Because the failure to charge an offense is the kind of defect which implicates due process concerns, it may be attacked at any time. *People v. DiLorenzo*, 169 Ill. 2d 318, 321 (1996).

¶ 23    When the sufficiency of the charging instrument is attacked in a pretrial motion, the standard of review is to determine whether the instrument strictly complies with the requirements of section 111-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/111-3 (West 2020)). *Meyers*, 158 Ill. 2d at 51. However, when, as in this case, the sufficiency of the charging instrument is attacked for the first time on appeal, the standard of review is more liberal. *DiLorenzo*, 169 Ill. 2d at 322. For appellate review, "it is sufficient that the indictment apprised the accused of the precise offense charged with enough specificity to (1) allow preparation of his defense and (2) allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct." *Id.* To be fatal, a variance between the charging document and the proof at trial " 'must be material and be of such character as may mislead the accused in making his defense or expose him to double jeopardy.' " *People v. Davis*, 82 Ill. 2d 534, 539 (1980) (quoting *People v. Figgers*, 23 Ill. 2d 516, 518-19 (1962)). Whether a charging instrument was sufficient is a question of law that we review *de novo*. *People v. Espinoza*, 2015 IL 118218, ¶ 15.

¶ 24    Here, defendant was charged by misdemeanor complaint as follows:

> "[Defendant] *** committed the offense(s) of resisting a peace officer in that he knowingly obstructed the performance of Det. Gibson of an authorized act within his official capacity being the lawful investigation of a crime, knowing Det. Gibson to be a peace officer engaged in the execution of his official duties, in that he refused to obey lawful commands by Det. Gibson to produce identification and/or identify him[self] while Det. Gibson was investigating a crime involving the defendant in violation of [720 ILCS 5/31-1.]"

¶ 25    Initially, we note that there was no variance at trial between the charging instrument and the evidence presented at trial. The State charged defendant with obstructing Gibson's investigation. At trial, the State presented evidence of defendant's encounters with both Gibson and Zurawski, both of whom testified. Both before and after presenting its case in chief, the State sought to amend the indictment. In its initial motion to amend, the State did not abandon its theory that defendant obstructed Gibson's investigation. Neither, at that point, did the State seek merely to correct a name in the indictment. In its initial motion, it sought instead to add a count. Defense counsel objected, offering that it was his belief that the State was attempting to add another count of obstructing to a different officer. In response, the State offered that it was "part of the same incident." Clearly, the State's initial intent was to achieve a conviction for obstruction of both Gibson and Zurawski, not a conviction for only one of the two. That the State presented evidence regarding defendant's encounters with both Gibson and Zurawski did not create a variance between the indictment and the evidence presented.

¶ 26    With respect to the argument that defendant might have been misled in making his defense, we must reject it out of hand. Up until trial, defendant had no notice that the State would be seeking to amend its complaint. The complaint, to which defendant answered ready and for which he demanded a bench trial, named Gibson. There is no indication that defendant prepared a defense to other than the allegations made in the filed complaint. Had the court granted either of the State's two motions to amend, defendant's argument and State's assertion regarding trial preparation might have merit.

¶ 27    Both defendant and the State cite *People v. Durdin*, 312 Ill. App. 3d 4 (2000), as instructive. In *Durdin*, the defendant was charged with delivery of a controlled substance (cocaine) within 1000 feet of a school. *Id.* at 5-6. At trial, the State's evidence consisted of witness testimony

that defendant delivered "blow," a slang term for heroin. *Id.* at 7. Additionally, the parties had stipulated that the controlled substance delivered by defendant was heroin. *Id.* On appeal, the court found there was a fatal variance between the indictment, which alleged delivery of cocaine, and the evidence at trial and conviction for delivery of heroin. *Id.* Accordingly, defendant's conviction was reversed.

¶ 28    *Durdin* is distinguishable. Here, there was no confusion on the part of the trial court with respect to the charging instrument. Unlike the court in *Durdin*, the trial court here expressly noted that the indictment charged obstruction of Gibson's investigation, and not Zurawski's. The court's comments following the trial were to the effect that defendant was guilty of obstructing Gibson's investigation. In fact, the court commented earlier that what was before the court were allegations of obstruction of Gibson and not of Zurawski. Further, there was no stipulation regarding the evidence in this case. Unlike in *Durdin*, defendant was tried and convicted of the precise offense for which he had been indicted.

¶ 29    Further, evidence of the alleged obstruction of Gibson's investigation did not render the indictment at variance merely because the court suggested that defendant's conduct toward Zurawski also to have been obstructing. The court's later comments, upon denial of defendant's motion for a new trial, were, at the least, conflicting, and, at the most, an indication of the strength of the State's evidence of obstructive conduct towards Gibson. Notably, the court stated that the "gravamen of [its] finding" had nothing to do with what had occurred inside the gas station. Clearly, the court was fully aware that the subject of the indictment was Gibson. Significantly, the court did not grant defendant's motion for a new trial.

¶ 30    Moreover, there is no evidence in the record of a conviction of obstructive conduct related to anyone other than Gibson. The Code defines conviction as follows: "a judgment of conviction or sentence entered upon a plea of guilty or upon a verdict or finding of guilty of an offense, rendered by a legally constituted jury or by a court of competent jurisdiction authorized to try the case without a jury." 720 ILCS 5/2-5 (West 2020). At the close of all of the evidence, and again upon denying defendant's motion for a directed finding, the court noted that Gibson, not Zurawski, was the subject of the obstructive conduct. Whatever the meaning of the court's "gravamen" comments, as there was no complaint against defendant for obstructing Zurawski, a point repeatedly made clear by the trial court, there could be no conviction entered against him for the uncharged offense.

¶ 31    In sum, we do not find a fatal variance in the complaint. Defendant's preparation of his defense against the charged obstruction of Gibson's investigation was in no way hampered by the State's eleventh hour attempts to amend the complaint. And, finally, defendant's conviction for obstruction of Gibson's investigation, will serve as a bar to any subsequent prosecution arising out of the same conduct.[2]

¶ 32                                   B. Sufficiency of the Evidence

¶ 33    Having concluded that there was no variance between the charging instrument and the evidence presented at trial, we address defendant's primary argument that the evidence was

---

[2]We note merely in passing that under the compulsory joinder statute the State is required to prosecute all known offenses within the jurisdiction of a single court in a single criminal case "if they are based on the same act." 720 ILCS 5/3-3(b) (West 2020).

insufficient to convict. Prior to proceeding, we set forth the familiar principles that guide our review.

¶ 34    When reviewing the sufficiency of the evidence in a criminal matter, our inquiry is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Baskerville*, 2012 IL 111056, ¶ 31 (citing *People v. Davison*, 233 Ill. 2d 30, 43 (2009)). Under this standard, every reasonable inference from the evidence must be allowed in favor of the State. *Id.* The determination of the weight to be given to the witnesses' testimony, their credibility, and the reasonable inferences to be drawn from the evidence are the responsibility of the trier of fact. *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 35    Here, the facts are not in dispute. Thus, we are merely applying the law to the set of facts us. Accordingly, our review is *de novo*. See *People v. Fernandez*, 2011 IL App (2d) 100473, ¶ 5.

¶ 36    Section 31-1(a) of the Code provides, in pertinent part:
> "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer *** of any authorized act within his or her official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a) (West 2016).

¶ 37    To meet its burden, the State was required to prove that (1) defendant knowingly obstructed a peace officer, (2) the officer was performing an authorized act, and (2) defendant knew the officer as a peace officer. 720 ILCS 5/31-1(a) (West 2016). Section 31-1(a) does not prohibit any particular act, only the result of obstructing. *People v. Kotlinski*, 2011 IL App (2d) 101251, ¶ 54. "The legislative focus of section 31-1(a) is on the tendency of the conduct to interpose an obstacle that impedes or hinders the officer in the performance of his authorized duties." *Baskerville*, 2012 IL 111056, ¶ 23.

¶ 38    There is no dispute that the officer was performing an authorized act. Neither does defendant claim a lack of knowledge of Gibson's office. The only dispute is whether defendant's conduct toward Gibson, as charged, was obstructive.

¶ 39    The State argues that the combination of defendant's actions in failing to adhere to Gibson's and Zurawski's commands outside of the store constituted more than being merely argumentative. It points out that defendant failed to obey the multiple orders to stop walking back towards the vehicle where the possible kidnap victim was located. The State argues that these events hindered the officers' investigation into whether defendant was the person implicated in the dispatch in the possible kidnapping.

¶ 40    The complaint alleged that defendant "refused to obey a lawful command *** by Detective Gibson to produce identification and/or identify him[self]." Nothing in the complaint identifies Zurawski or other officers or otherwise describes defendant's conduct towards them. The only alleged obstructive conduct, which was the subject of the complaint, the trial, and here on appeal, was towards Gibson. Neither does the complaint indicate that defendant was ordered to stop walking toward the vehicle and that he failed to do so, only that he failed to produce identification as ordered. We note additionally that based on the testimony, Zurawski and other officers were at the vehicle, speaking with the female passenger, who remained in the vehicle even after defendant had exited and also while defendant and Gibson were still inside the gas station. While speaking with the female, the officers learned that she was not the victim

identified in the dispatch. Further, according to Gibson's testimony, defendant told him that "you've got the wrong guy."

¶ 41 No doubt, defendant was uncooperative and argumentative. However, such conduct has been, heretofore, held by our court as not necessarily violative of section 31-1(a). Thus, and in light of the totality of the facts here, we cannot find that defendant's refusal to provide identification to Gibson hindered his investigation. See *People v. McCoy*, 378 Ill. App. 3d 954, 962 (2008) (holding that "verbal resistance or argument alone, even the use of abusive language, is not a violation of the statute"); see also *People v. Berardi*, 407 Ill. App. 3d 575 (2011) (where the defendant refused to adhere to the officers' request to leave an area was initially argumentative, the conviction for obstruction was reversed).

¶ 42 The State argues that cases cited by defendant are inapposite because they deal solely with the fact the defendant did not identify himself to Gibson. They argue that here, defendant disobeyed several orders and that "Officer Zurawski then had to push defendant back" several times while attempting to talk to the female passenger. Although that conduct was the subject of testimony, it was not the subject of the complaint. Again, the complaint alleged only a refusal to provide identification. Nothing in the complaint indicates a physical touching. Nothing in the complaint identifies an encounter with Zurawski. The cases cited by defendant are those that are factually aligned with the charging instrument in this case.

¶ 43 In *People v. Fernandez*, 2011 IL App (2d) 100473, cited by defendant, the defendant was convicted of two counts of resisting or obstructing arrest pursuant to section 31-1(a) of the Criminal Code of 1961 (720 ILCS 5/31-1(a) (West 2008)). Evidence in the record revealed that the defendant refused to leave a movie theater. *Fernandez*, 2011 IL App (2d) 100473, ¶ 2. Police were called and, once at the scene, asked the defendant his name. *Id.* The defendant refused and was ultimately arrested. *Id.* ¶ 3. On appeal, the defendant challenged only the count for resisting arrest. *Id.* ¶ 5. In reversing the conviction, the court noted that Illinois cases have almost uniformly held that an initial failure to provide basic identifying information is not criminal. *Id.* ¶ 8 (citing cases).

¶ 44 As far back as our supreme court's opinion in *People v. Raby*, 40 Ill. 2d 392, 399 (1968), decided on constitutional grounds, courts have held that the obstruction statute does "not proscribe mere argument with a policeman." On the facts of this case, we find that the evidence that defendant obstructed Gibson's investigation of the alleged kidnapping was insufficient to convict. Accordingly, we reverse defendant's conviction on that basis.

¶ 45                                        III. CONCLUSION
¶ 46 For the reasons stated, we reverse the judgment of the circuit court.

¶ 47 Reversed.